THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE PRESIDENT, DIRECTORS AND COMPANY OF THE ALBANY AND BETHLEHEM TURNPIKE ROAD, Appellant, v. WILLIAM SELKIRK et al., as Assessors of the Town of Bethlehem, Respondents.

TAX — DEFECTIVE ASSESSMENT UPON REAL ESTATE OF TURNPIKE COMPANY NOT OWNING FEE OF ITS ROAD. Where a turnpike company does not own the fee of the land over which its road passes, whatever may be the nature of its interest therein, if taxable at all, it is not adequately described in an assessment upon "5 miles of highway" for the "full value of real property taxed;" such an assessment is fatally defective for not indicating in its description that it was laid upon something other than an ownership of the fee of the land, and that structures or superstructures, or something apart from the franchise which might be property, were intended to be taxed thereunder.

*Matter of Albany & Bethlehem Turnpike Road,* 94 App. Div. 509, reversed.

(Argued January 9, 1905; decided February 21, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 26, 1904, confirming the proceedings of the defendants in

assessing the property of the relator for the purposes of taxation.

The facts, so far as material, are stated in the opinion.

*Frederick Townsend* and *Marcus T. Hun* for appellant. The relator does not have title to the roadway described in the assessment, and that is apparent on the face of the return. (*Trevivan* v. *Lawrence*, 2 Smith L. C. 510; Bigelow on Estoppel, ch. 1.) It is improper to sustain the assessment actually made by assuming, *first*, that the relator has other real estate than that described, and, *second*, that that has been assessed. (*State Railroad Tax Cases*, 92 U. S. 575; L. 1896, ch. 908, §§ 2, 4.)

*Newton B. Van Derzee* for respondents. The property of relator was properly assessed as real estate. (*People ex rel.* v. *Cassity*, 46 N. Y. 46; *People ex rel.* v. *Comr. of Taxes*, 101 N. Y. 322; *H. R. B. Co.* v. *Patterson*, 74 N. Y. 365; *People ex rel.* v. *Commissioners*, 80 N. Y. 573; *People ex rel.* v. *Commissioners*, 82 N. Y. 462; *People ex rel.* v. *Bd. of Assessors*, 93 N. Y. 308; *Smith* v. *Mayor, etc.*, 68 N. Y. 552.) It is not necessary that the fee of the land over which the turnpike was constructed should be in the corporation assessed. (*Smith* v. *Mayor, etc.*, 68 N. Y. 552; *People ex rel.* v. *Garmon*, 34 Misc. Rep. 350.)

Gray, J. The relator is a turnpike corporation, which was organized pursuant to an act of the legislature, passed in 1804, and which exists under the same and various amendatory acts. A part of its road, which was constructed over an old highway, is in the town of Bethlehem, in the county of Albany, and in 1903 the assessors of that town assessed its real estate for purposes of taxation. The assessment in the column of the assessment roll, required for the description of the property proposed to be taxed, was in this language: "From city limits to Babcock's Corners and a branch from Corning's Hill to gate of Isaac Sanders on River Road below Abbey hotel

1905.] People ex rel. A. & B. T. Road v. Selkirk. 403

N. Y. Rep.]        Opinion of the Court, per Gray, J.

—5 miles of highway" and the amount of the assessment
upon the "full value of real property taxed" was $20,000.
An application to cancel the assessment having been denied
by the assessors, the relator obtained a writ of certiorari to
review their action and, upon the matter coming on to be
heard before the Appellate Division of the Supreme Court,
in the third department, the assessment was there confirmed.
It appears that the relator has its principal office in the city
of Albany; where is, also, its toll house for the collection
of tolls from travelers upon the road. Unless, therefore, it is
shown that it owns real property for assessment within the
town of Bethlehem, the taxing district, the assessment was
invalid. The petition alleges that the turnpike road was
an ancient highway and that the fee thereof was never
acquired, whether by purchase, condemnation, or otherwise.
The return to the writ alleges that the relator owns the fee of
the lands; but qualifies the assertion by basing it upon certain
facts, "which comprise all the evidence upon the subject."
Those facts are stated to be the power and authority given to
the corporation to "contract and agree" for the purchase of
lands, for the purpose of making the road and for maintain-
ing a toll house and other works pertaining to the road; that
it has been in the sole possession of and control over the road-
way to the exclusion of all persons, except travelers thereon,
and has made all repairs to the surface of the road and to
bridges and culverts throughout the same at its own expense;
that upon certain occasions, instanced in the return, the com-
pany had granted the right to other corporations to cross, or
to use, the road for a consideration and a portion thereof had
been acquired for railroad uses in condemnation proceedings.
But after enumerating the various facts, which they deemed
to evidence an ownership in fee, the assessors admit the prior
existence of a highway and that there is nothing which evi-
dences the acquisition by the company of any property,
whether by condemnation proceedings, or by conveyances of
record; "nor are there any original conveyances to the peti-
tioner in its possession." It is, therefore, the necessary

inference, if not the actual admission, that the company does not own the fee of the land constituting the road, and the claim of the respondents cannot, now, be based upon any such fact.   The Appellate Division, in an opinion, expressed, very plainly, the theory upon which the assessment is sought to be sustained and it is the only one, which, indeed, is at all arguable.   The opinion, having admitted the insufficiency of the evidence to show the ownership of the fee, finds a basis for an assumption that the relator had structures, which, under the provisions of the Tax Law, (Subdiv. 3 of sec. 2 of chap. 908 of the Laws of 1896, as amended by chap. 712 of the Laws of 1899), can be separately assessed as real property.   The opinion reads as follows : " It may fairly be assumed that the relator substantially complied with the articles of incorporation, and that it has erected and maintained tangible property on said roadway.   All bridges, culverts, ditches and prepared roadbed constitute articles and structures upon the soil, of which the relator has the exclusive and continued possession and control and every beneficial use and enjoyment, as fully as if it were the owner of the fee of the land upon which such property is used.   *   *   *   Such easement and tangible property come within the statutory definition of 'real property' for the purposes of the assessment and collection of taxes."

Doubtless any tangible property of the relator acquired, or constructed, and maintained within an exercise of its corporate powers and privileges, of which the learned court below makes mention in its opinion, may be subjected to assessment for taxation as real property, within the intendment of the Tax Law.   There is, however, no evidence in the record of anything in the nature of property within the town limits, except it consist in the roadbed ; which, presumably, the relator did construct according to the precise directions in the act of incorporation, as to width, depth and materials.   I say presumably ; because, under the act, the license from the governor to maintain the toll house was dependent upon the completion of the road according to the statutory requirements.

If we assume that to be an " article," or " structure," or
" superstructure," classified by the Tax Law as real property,
and if we might, further, assume the construction, or addition,
and the present existence, of other " articles and structures,"
which under the charter might be erected and maintained —
an assumption which, as I have said, does not rest upon
any allegation in the return showing that there were such —
then the difficulty in the way of sustaining the assessment as
made is that the description is insufficient.   What the assess-
ors undertook to assess is " 5 miles of highway ; " but that
includes, if it does not, in the ordinary understanding, mean
the fee of the land.   As we have seen, that is not the fact,
and all that the relator possessed was something in the nature
of a public easement in the highway, which it acquired by
the grant from the legislature.   (*People ex rel. Dunkirk & F.
R. R. Co.* v. *Cassity,* 46 N. Y. 46.)   Undoubtedly, the assess-
ors intended only the fee of the land and their present con-
tention appears to have been rather in the nature of an after-
thought.   The assessment roll was misleading, if it meant more,
and gave no notice to the relator that it was proposed to tax it
upon something which, though not the fee, nevertheless, was
deemed taxable as real property, within the Tax Law.   Notice,
or at least the means of knowledge, is an essential element of
every just proceeding, which affects the rights of persons, or
property, and the identity of the subject-matter of the duty
of payment of taxes should be made known to him, who is to
perform it, by name, or description.   (Cooley on Taxation, p.
282.)   " Five miles of highway " is but describing five miles
of land held in the form of a road.   It suggests nothing else
to the ordinary mind, in the way of something besides an
ownership, or an interest, in the soil.   In the cases, to which
we are referred by the respondents, as justifying their pro-
ceeding, the assessments, which were made, described struc-
tures upon, or additions to, the land ; as will appear from an
examination of the records.   (*People ex rel. Dunkirk & F.
R. R. Co.* v. *Cassity, supra ; Hudson River Bridge Co.* v.
*Patterson,* 74 N. Y. 365 ; *People ex rel. Van Nest* v. *Commis-*

*sioners of Taxes, etc.*, 80 ib. 573; *People ex rel. N. Y. Elev. R. R. Co.* v. *Commissioners of Taxes, etc.*, 82 ib. 459.) It is not, under our Tax Law, necessary that the corporation to be taxed in respect of its interest in real property, shall be the owner of the fee. If it owns that which, being upon, affixed to, or incidental to the land, is classified for taxation purposes by the statute with land, it is assessable for a real property tax; but it is entitled to be reasonably apprised of the subject-matter of the assessment.

There was no information, nor notice, given to the relator of the subject of the proposed tax to be laid upon it and that amounted to the denial of an opportunity to be heard upon the question of liability. In *Stuart* v. *Palmer*, (74 N. Y. 183), quoting from *Matter of Trustees of N. Y. P. Epis. Pub. School*, (31 N. Y. 574), it was said that "it is manifestly proper that the taxpayers should have notice of the imposition proposed to be laid upon them and an opportunity for making suggestions and explanations to the proper administrative board, or office." Both the information and the opportunity to be heard are necessary and must be furnished. That was not the case here.

I doubt that the relator was taxable at the hands of these local assessors upon the interest, which it had in the highway through the public grant; but if that should be regarded as taxable property, then it is my opinion that the assessment was fatally defective for not indicating in its description that it was laid upon something other than an ownership of the fee of the land and that structures, or superstructures, or something apart from the franchise which might be property, were intended to be taxed thereunder.

The order appealed from should be reversed and the determination of the assessors should be set aside, with costs in both courts to the appellant.

O'Brien, J. The relator has been assessed in the sum of twenty thousand dollars, as the owner of five miles of highway, upon the theory that it owned the highway, and, there-

fore, it owned taxable real estate or land within the meaning of the statute. That this was the theory of the assessors is plainly set forth in their return, wherein it is alleged that the relator " owns the fee of the lands included within the limits of the turnpike and as used and occupied." On the appeal this theory has been abandoned, since it is admitted that the relator did not own the fee of the road, but that it was in the public or in the abutting owners.

But, nevertheless, it is now sought to maintain the assessment as it is, on the sole ground that although the relator does not own the fee of the land, yet it has some other inferior interest incapable of any accurate description but which is taxable. Of course, this new theory must rest upon the arbitrary assumption that the inferior right, which it is said the relator has, whatever it may be, is just as valuable for the purpose of taxation as if the relator had the fee of the highway. It must be admitted that the assessors, on their own showing, never considered or passed upon that question ; and so the contention now is that the courts can make the assessment on some new theory that apparently the assessors never thought of. Nothing would seem to be more reasonable and just than that the assessment should be sent back to the assessors to enable them to correct their own mistake as to the title and interest that the relator has in the highway and to make the assessment on the new theory, if they can understand it. If the relator has any taxable interest in that highway at all, how can we say that, for instance, an easement ought to be taxed just the same as the fee? The assessors may think otherwise, and very properly conclude that what is called an easement is not worth as much as if the relator owned the highway absolutely and in fee. For these reasons I concur with Judge Gray that the order should be reversed.

But I think this assessment is open to a much more serious objection. When we seek to avoid subtilities and refinements which, it is admitted, cannot be accurately expressed in words and view the matter in the light of plain common sense it will be found that the relator has no taxable interest in this

highway except the franchise to collect tolls from travelers. That is taxable property, and is taxed already under the general law imposing a franchise tax on corporations. It is not quite correct to say that the relator is in the exclusive possession and control of this highway for the purpose of collecting tolls. That can be true only of such travel as may pass through its toll gates. The abutting property owners have the right of ingress and egress to the free use of the road for all local and domestic purposes. It is only when they are required to travel long distances from home and to pass through some toll gate that they are required to pay anything, and yet the relator is obliged to maintain the road in good condition for the benefit of such local and domestic use as the abutting owners of farms may require in the transaction of their local affairs. The road is just as free to all persons who want to use it between toll gates only as any other highway.

It is said that about one hundred years ago the statute required the relator to cover the highway with twelve inches of stone and gravel. How much of that covering is there now we are not informed by the record, but it is said that this covering is a "superstructure" taxable as land. It is a very liberal use of terms to say that when stone and gravel are put upon a common country road in order to make it a better road, that said stone and gravel become and constitute a taxable superstructure. It would, I think, be more correct to say that it was an *accession* to the road and inseparable from it for any purpose, so that whoever owns the fee of the road in question owns it from top to bottom. The argument to support the assessment is that the surface of the road, for a few inches down, has one legal character for the purpose of taxation, while the foundation, which is the original road as it was, has another and wholly different character. I should suppose that it is all one inseparable thing that, for any purpose, cannot be divided. But however that may be, it is plain that the assessors, in order to assess this road distinct from the franchise which is now taxed and the fee of the land, which concededly the relator does not own, must go

1905.]   People ex rel. A. & B. T. Road *v*. Selkirk.   **409**

N. Y. Rep.]          Opinion per O'Brien, J.

through the mental operation of separating the stone and gravel which the relator put upon the surface from everything else. This, it seems to me, suggests the impossibility of assessing a highway as land. Such a thing as a road, whether good, bad or indifferent, was never intended to be assessed, and it seems that for a hundred years no one thought that it was. We are struggling now with that question for the first time, and it is sought to be justified by arguments which, when carried to their logical result, would seem to be absurd.

In my opinion the relator has no interest in the highway in question that can be called real estate or land. Whatever right the relator has in this highway is not land in any legal or proper sense of the word, and it is wholly incapable of any valuation by any principle of valuation known to the law. It is impossible to conceive of such a thing as an assessment on land when there is no known rule by which its value can be ascertained. It is just as impossible to conceive of an assessment upon land when the assessment cannot be enforced by a sale of the thing assessed. In the case at bar no one has attempted to point out how, in case the relator does not pay the assessment, the land which it is said has been assessed can be sold. What is the thing which the public authorities are authorized to sell in case of a neglect or refusal of the relator to pay the assessment? What will the purchaser at such a sale acquire and how will he be put into possession? I am now speaking of a sale of something distinct from the fee which the relator does not own and distinct from the franchise which cannot be assessed by the local assessors or sold. It is quite obvious, I think, that the only way that the tax in question could be enforced is by treating it as a personal tax and suing the relator for its collection. But obviously that would be a total abandonment of the whole theory that it is a tax upon land, since, if it is, the way to collect it is to sell the land.

I have said that the relator has no interest in this highway as land that is capable of any valuation. If the assessors had assessed this road against the relator for one hundred thousand

dollars instead of twenty thousand dollars, the larger assessment would be just as good as the smaller one. How can the relator review such an assessment by certiorari? How is the interest assessed, whatever it may be, open to any contest as to the valuation. The plain truth is that the relator would be perfectly helpless and without any remedy except the arbitrary discretion of the assessors. They would have no more remedy to contest the larger assessment than they have to contest the present one. They could not call witnesses to prove the value of land on the line of this road, since that would be no evidence as to the value of the right which, it is said, the relator has independent of the fee and of the franchise. The relator has no interest in this highway that it can sell or transfer or that can be taken on execution, and yet it is said that it must have some indescribable interest that is taxable.

The relator's right in this highway is analogous to that of a ferry company operating a ferry across public rivers or lakes or arms of the sea. It is a franchise or grant from the state which may be taxed. Its boats are personal property that may be taxed as such. Its stations on the shore may be taxed as land, but it uses a public highway as the relator does, to make money by collecting tolls. No one has yet thought of such a thing as taxing the water over which the company floats its boats and the land under water as real estate or as land, and yet every argument in support of the assessment in question would, it seems to me, be applicable to an assessment upon the route of the ferry boat across the river or other waters. It uses the water and the land under water to support and float its boats or other means of transportation just as the highway in question is made use of by the relator in order to propel vehicles of all kinds for the purpose of transporting passengers. It seems to me that it would be wiser to leave it to the legislature to bring this highway within the scope of the taxing power by some express words or definition, rather than by judicial construction to make taxable real estate out of the right that the turnpike company has in the highway to collect tolls; so I am in favor of reversing the order.

Vann, J. (dissenting). Prior to 1804 the road now in the possession of the relator was an ordinary highway, but in that year the legislature passed an act incorporating the relator and granting it the right to convert the highway into a turnpike and to charge toll for the privilege of traveling thereon. (L. 1804, ch. 90; L. 1805, ch. 77.) This grant was made upon the condition that within five years after the passage of the act the relator should open the highway four rods wide, grade it so that the greatest ascent should not exceed fourteen inches in any one rod and face the surface thereof to the extent of twenty-eight feet of its width with broken stone or gravel to a depth of not less than twelve inches, well compacted together. This condition was performed and since 1809 the road has been a turnpike in the exclusive possession of the relator, which has kept it in repair and has charged the tolls authorized by law. On three occasions the relator has received through contract or condemnation considerable sums of money from different railroads for the privilege of crossing its road or occupying a portion thereof with tracks.

In 1903, apparently for the first time in nearly a century, an assessment was made upon that part of the property of the relator lying within the town of Bethlehem in the county of Albany, which was substantially in the following form : The entire assessment was under the general head of " Incorporated companies," and in the column headed " Names of Taxable persons " was written " Albany and Bethlehem Turnpike Co." In the next column under the head " Description " were these words, " From city line to Babcock's Corners and a branch from Corning's Hill to gate of Isaac Sanders on the River Road below Abbey Hotel — 5 miles of highway." In the third column under the head of " Full valuation of real property taxed " were the figures " $20,000," and in the fourth, under the head of " Total value of real and personal property taxed," the figures were repeated.

The relator does not own the lands over which the road passes, for from the facts stated in the return the fee is presumed to be in the abutting owners. It owns a right, how-

ever, granted by the state, which is attached to and cannot be severed from the land.  While less than the fee it is practically the same as the fee and worth as much.  It is an interest in the land because it cannot exist without it, and includes the exclusive possession of the land and the structures thereon. It is the right to the exclusive possession of land which was once a highway, for the purpose of maintaining it as a turnpike and charging tolls for traveling over the same.  It is an actual property right in the soil for an invasion of which, as was held many years ago, trespass *quare clausum fregit* would lie.  (*Seneca Road Co.* v. *Auburn & Rochester R. R. Co.*, 5 Hill, 170, 179.)  The possession includes the superstructure erected thereon by the relator, five miles long, twenty-eight feet wide and twelve inches high, as required by the grant from the legislature.  Power to maintain that structure on the land is part of the right and includes an interest in the land sufficient to authorize and protect the structure.  Said right is property, assignable by contract and transferable by sale under execution or the Tax Law, but it is not easy to assign a name thereto.  It is not like the privilege of maintaining a ferry where there is no occupation of land and no superstructure erected and maintained as a condition of the grant.  It is not a license, for it is irrevocable except by way of forfeiture for cause.  It is more than a franchise, for it is an interest in the land and includes the exclusive possession thereof and of the structures thereon.  It is in the nature of an easement in gross which has no dominant tenement, or a right of way in gross " which has neither of its termini on the premises of the owner and is not appurtenant to any estate."  (14 Cyc. 1140 ; 15 Am. & Eng. Encyc. [2d ed.] 350 ; Jones on Easements, §§ 33– 49 ; Elliott Roads and Streets, §§ 1–68 ; Gale on Easements [7th ed.], 3.)  It is the right which formerly belonged to the public, and public easements are always in gross, for there can be no dominant estate.  (Id.)  It is property, but neither personal nor exempt from taxation and, hence, it was properly assessed as real estate in accordance with the provisions of the Tax Law,  (§§ 2, 3, 4, 11 and 21.)

The judgment about to be pronounced does not proceed upon the theory that the relator has no interest in the highway subject to taxation, but that the assessors have failed to adequately describe the interest. The superstructures were not assessed, but the highway was. It was not assessed as an ordinary highway, which is not assessable for it belongs to the public, but as the highway of a turnpike company. The assessment is against a turnpike company as owner, and is laid upon five miles of highway between definite points, the total valuation being placed in the real estate column. What else should be included in order to give the property owner adequate notice? There is no room for legal definitions in an assessment roll. It was unnecessary to declare that the property assessed was an easement in gross, or a right of way in gross, neither of which would have been strictly accurate, or even that it was in the nature of the one or the other, for the assessment described the highway of a turnpike company, and that was precisely what the relator owned. The law did not require the assessors to say that the property taxed was the exclusive right to possess, maintain and charge toll for the privilege of traveling over a strip of land in the shape of an oblong parallelogram five miles long and four rods wide, extending from the city line to Babcock's Corners. Assessors are not lawyers, but practical men, and a practical description is a lawful description. Five miles of highway belonging to an incorporated turnpike company does not mean ownership of the fee of the highway, but ownership of the usual right of such companies in the highway. No person could have reasonably understood that it meant anything but the peculiar right of a turnpike company, which, though not easily defined, is known of all. It would have been difficult, without more circumlocution than the necessary brevity of an assessment will permit, for the assessors to have written a better description. While they might have used the word "turnpike," which formerly meant a gate turning on a pivot with pikes for protection, but now means a turnpike road, still the road of a turnpike company is necessarily

a turnpike road. The charter of the company is in terms a public act, and, hence, all are presumed to know the nature and extent of the right conferred by it upon the relator. (§ 22.) The act virtually becomes a part of the description, so far as the relator's right in or to the road is concerned. The relator knew its own right, no one could know it better, and I think that right was taxable and was sufficiently described to meet all lawful requirements. For these reasons, I vote for affirmance.

HAIGHT and WERNER, JJ., concur with GRAY, J.; O'BRIEN, J., also reads for reversal; CULLEN, Ch. J., and BARTLETT, J., concur with VANN, J.

Order reversed, etc.