THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BEAR MOUNTAIN HUDSON RIVER BRIDGE COMPANY, Relator, *v.* JAMES DIAMOND, the Assessor of the Town of Cortlandt, and Others, Constituting the Board of Review of the Town of Cortlandt, Westchester County, New York, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BEAR MOUNTAIN HUDSON RIVER BRIDGE COMPANY, Relator, *v.* BENJAMIN SHELDON and Others, Assessors of the Town of Highlands, Orange County, New York, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BEAR MOUNTAIN HUDSON RIVER BRIDGE COMPANY, Relator, *v.* AMBROSE JAMES, SR., and Others, Assessors of the Town of Stony Point, Rockland County, New York, Respondents.

Supreme Court, Westchester County, December 31, 1925.

Taxation — assessment — certiorari to review assessment by three towns of Bear Mountain bridge and approaches — bridge and approaches are all on State land — neither bridge nor approaches belong to relator which has use only for thirty years under Laws of 1922, chap. 358 — Transportation Corporations Law, § 141, not applicable — bridge and approaches are not subject to assessment and taxation as real property — part of bridge assessed by one town not within that town — no part of bridge or approaches in third town except small part of sidewalk.

Bear Mountain bridge which crosses the Hudson river near Stony Point and the approaches leading thereto, all of which are on State land and which were constructed and are maintained by the relator, are not assessable by local assessors as real property against the relator for, under chapter 358 of the Laws of 1922 incorporating the relator, it has only the right to maintain the bridge and to receive toll therefrom for a period of thirty years, when the bridge and its approaches will become the property of the State of New York.

Section 141 of the Transportation Corporations Law applies only to bridges owned by a transportation corporation and which are constructed over non-navigable streams, conditions which do not exist in this case.

Part of the bridge which was assessed by one town is not within that town, since it appears that the town line does not run to the center of the Hudson river and that no part of the bridge or its approaches is within the confines of the third town except a small part of the sidewalk, the value of which cannot justify the assessment made.

**240** PEOPLE EX REL. BEAR MOUNTAIN H. R. B. CO. *v.* DIAMOND.

Supreme Court, December, 1925.          [Vol. 126

CERTIORARI proceedings to review town assessments.

*Clark, Carr & Ellis* [*Reid L. Carr* of counsel], for the relator.

*James Dempsey,* for James Diamond and others, respondents.

*Grahm Witschief,* for Benjamin Sheldon and others, respondents.

*E. W. Hofstatter,* for Ambrose James, Sr., and others, respondents.

TOMPKINS, J. These are three certiorari proceedings to review assessments in the town of Cortlandt in Westchester county, and the town of Highlands in Orange county, and the town of Stony Point in Rockland county. The assessments are all against property of the Bear Mountain Hudson River Bridge Company and each assessment is against the part of the bridge company's property claimed by the town assessors to be located in their respective towns. The property assessed is what is known as the Bear Mountain bridge spanning the Hudson river from near the boundary line between the counties of Orange and Rockland and between the town of Stony Point in Rockland county and the town of Highlands, in Orange county, on the west side of the river, to the said town of Cortlandt on the east shore of the river. The assessment made by the assessors of the town of Cortlandt is for the sum of $2,000,000 and covers the easterly portion of the said bridge, and the towers, abutments and other structures at its easterly end and also includes an approach roadway about three miles in length which was constructed by the relator for the use of the public in traveling to and from said bridge at its easterly end. All of this roadway and every part of the bridge and other structures included in the assessment are on real property owned by the State of New York.

The assessment by the town of Highlands is for the sum of $350,000 and purports to cover the anchorage building and a part of the superstructure thereof at its westerly end.

The assessment by the town of Stony Point is for the sum of $1,027,316 and covers all that part of the suspension bridge from the middle of the Hudson river to its westerly shore, and also all abutments and other bridge structures located in the town of Stony Point, and all of these structures rest upon lands owned by the State of New York, so that we have the conceded fact that all of the structures involved in these three assessments stand upon real estate belonging to the State of New York.

It was agreed by counsel for all parties that the questions of law presented by the undisputed facts should be first determined by the court before any proofs should be taken on the questions of valuations and inequalities. Accordingly, counsel for all con-

cerned have been heard and briefs have been submitted on the question of the legality of the assessments and whether any of the relator's property in question is liable to assessment by said towns as real property. There is no question of special franchise assessment or tax involved in these proceedings.

The relator was created by chapter 358 of the Laws of 1922, for the purpose of constructing, maintaining and operating the bridge in question for the use of the public, with the right to collect tolls for such use for a period of not more than thirty years, after which all rights of the relator will cease and terminate, and the bridge and its approaches and all the property included in these assessments will become, and thereafter be, the property of the State, without any compensation being made therefor to the relator.

By its charter the relator is required to operate the bridge for the said period of thirty years for the public use and to keep the bridge " open to the public at all times." It is to be used exclusively by pedestrians and for vehicular traffic and is not for the use of any railroad, and the relator cannot remove, sever or demolish the structure or convert it to any other purpose, so that we have it established beyond dispute that the bridge and its approaches are permanent structures and improvements upon the lands of the State with its consent, and without any interest in the relator after a period of thirty years, and with no right to remove the same nor any right in perpetuity or of a permanent character. In these circumstances is the bridge and its appurtenances assessable as real property by local assessors? Do they constitute real property within the meaning of the Tax Law? The respondents claim that section 141 of the Transportation Corporations Law justifies these assessments. It reads as follows: " So much of any bridge or toll house of any bridge corporation as may be within any town, city or village, shall be liable to taxation therein as real estate." This provision, I think, applies to a structure that is owned by, and permanently belongs to a bridge corporation organized under the Transportation Corporations Law and does not apply to these cases because this bridge company has no perpetual right in the property, nor power to remove or dispose of it. Besides, the relator does not exist under the Transportation Corporations Law, which relates only to corporations constructing and operating bridges over non-navigable streams. (Transp. Corp. Law, §§ 121, 128.)

The relator was created by a special act of the Legislature which expressly declares that it shall " have the power and be subject to the restrictions and liabilities prescribed by the General Corporation Law and the Stock Corporation Law." In my opinion, section 141 of the Transportation Corporations Law has no appli-

**242** People ex rel. Bear Mountain H. R. B. Co. *v.* Diamond.

Supreme Court, December, 1925.    [Vol. 126

cation.   There being no express legislative authority for these assessments, we must look to the general rules for guidance and a decision.   It is a well-settled rule that a building or other structure erected upon the land of another becomes a part of the land and is taxable as a part of the realty, unless there is a right of removal, reserved by express agreement or by implication of law.   (*People ex rel. Van Nest* v. *Commissioners*, 80 N. Y. 573; *People ex rel. Muller* v. *Board, etc.*, 93 id. 308.)   It is another well-known rule that ownership of real property to be liable to taxation " implies perpetuity or at least the possibility of perpetuity."   (*People ex rel. International Navigation Co.* v. *Barker*, 153 N. Y. 98.)   The relator has no right to remove or otherwise dispose of the bridge, but on the contrary, it is expressly provided in the act of incorporation that the relator shall maintain and operate the bridge for the public and keep it open for that purpose for thirty years, and then relinquish to the State all interest and rights in the structure, nor is there any claim that the relator can, by any possibility, own or operate the property in perpetuity.

The act incorporating the relator recites that it is for the purpose of " constructing, maintaining and operating " a bridge — not owning it; and in another section are the words, " such company, during the time when it has control of such bridge, may use for approaches thereto a parcel of State land," and in another place we find these words: " Shall maintain such roads in good repair at its own cost at all times during its control of such bridge."   These and other expressions in the act clearly indicate the intention of the Legislature to grant to the relator the right and duty to build, maintain and operate the bridge and collect tolls from the public for a period of thirty years, if the State did not sooner purchase the structure according to the terms of the act.   In either event, the relator must relinquish and turn over to the State all interest and control upon the expiration of thirty years without receiving any compensation from the State.

From the foregoing statement of the undisputed facts and the rules of law to which I have alluded, my conclusion is that the bridge and its approaches are not subject to assessment and taxation as real property by local assessors.   If they are liable to taxation under the Special Franchise Law, that is a matter for action by the State tax officials and not by town or village officers.

The case of *Central Bridge Corp.* v. *City of Lowell* (15 Gray, 106) is very similar to the cases at bar.   In that case the bridge corporation was authorized in 1825 to build a bridge across the Merrimack river and to collect tolls for its use over a period of seventy years, upon condition, however, that at the end of eighteen

years the bridge might be taken over by the commonwealth for the use of the public upon payment to the bridge corporation of the amount of their original outlay with nine per cent annual interest, less the amount already collected from tolls. The city of Lowell took the bridge for public use as a street in 1856, not by virtue of the recaption provision of the bridge corporation's charter, but in the exercise of its general power of eminent domain. In proceedings incident to such appropriation, the bridge corporation which claimed to be the owner of the bridge was allowed to prove before a sheriff's jury the value of the bridge as a structure owned by it, independently of the right to collect tolls. From this ruling by the sheriff the city appealed, and the question was presented whether the bridge corporation was the owner of the bridge. The Supreme Court of Massachusetts, in deciding this question, said: "The whole argument now goes on the assumption that the franchise and right to take tolls was, of itself, a valuable right and privilege taken; but, independently of that, the petitioners were the owners of the bridge as a building or structure, to be valued according to its cost in labor and materials, and perhaps deducting something therefrom on account of wear and the deterioration caused by time — being the actual value of such a structure or building to any one having occasion to acquire it and willing to pay the fair value for it. * * * The court are all of opinion that this claim of the petitioners and direction of the sheriff were founded on a mistaken view of the rights of these corporations. The bridge, as a structure, was a means only for using the public way over water; the way could not be used for land travel without a bridge which was, therefore, necessarily incident to it. The remuneration of the proprietors for the cost of building, maintaining and repairing the bridge consisted in a right to take the tolls fixed, for the term of seventy years. At the expiration of that term, the way, with the bridge and all its fixtures, would revert to the commonwealth, and the right of the proprietors in it would cease. * * * The proprietors themselves, by their charter, took no fee in the soil, but only an easement for a right of way for public use. Their whole beneficial interest consisted in the right to take the specified tolls until the grant should revert, or be redeemed, according to reservations therein made. This right of way, the right to build and maintain a bridge over the river, and the right to levy tolls, with their incidental and implied powers and privileges, constituted the entire franchise and qualified property of the proprietors. The sheriff having, in various forms, instructed the jury that they might take into consideration the petitioners' right of property in the bridge, as a bridge or structure belonging to them, inde-

pendently of their franchise, at the actual value of such a structure, we think the direction was erroneous and the verdict must be set aside."

There are other reasons why these assessments are illegal and could not stand, even though the structures were to be regarded as the real property of the relator, a different set of facts applying to the respondents in each of the three cases.

In the town of Cortlandt assessment the assessors have included in the $2,000,000 assessment about three miles of roadway built by the relator through and over lands of the State, for the use of the public leaving and approaching the bridge on the east side of the river, and the bridge and other structures and the approach roadway are all assessed as one item. The relator's charter contains the following provision respecting roads: " Such company, during the time when it has control of such bridge, may use for approaches thereto a parcel of State land three rods in width on the east side of the river extending from the easterly end of such bridge along the southerly side of Anthony's Nose to make connection with the Albany post road north of Annsville creek, and a parcel of State lands three rods in width, on the west side of the river, extending from the west end of such bridge for a distance of about three hundred yards to, and connecting with, the State highway through the Palisades Interstate Park. Such company shall construct upon and along such approaches a roadway conforming to the standard of construction adopted by the State Department of Highways for the construction of State routes and shall maintain such roads in good repair at its own cost at all times during its control of such bridge. * * * The provisions of the Penal Law, the General Highway Traffic Law and the Motor. Vehicle Law of the State of New York shall apply to the roadway and sidewalks of said bridge, together with the entrances and approaches thereto, with the same force and effect as though the same and all parts thereof were a public highway within the State of New York."

The approach roadway in the town of Cortlandt included in said assessment was constructed by the relator under this provision, at very large expense and entirely upon lands owned by the State. This road cannot be regarded as a building or structure or superstructure, or as real property liable to taxation by the town. All that has been done by way of excavating, leveling, grading, etc., is now a part of the real estate owned by the State of New York, subject only to the relator's rights and duty under the act of incorporation to maintain it for not more than thirty years for the use of the public in connection with the said bridge.

The question of the right to assess such a roadway was settled by the Court of Appeals in *People ex rel. A. & B. T. Road* v. *Selkirk* (180 N. Y. 401), in which the court said: " The argument to support the assessment is that the surface of the road, for a few inches down, has one legal character for the purpose of taxation, while the foundation, which is the original road as it was, has another and wholly different character. I should suppose that it is all one inseparable thing that, for any purpose, cannot be divided. But however that may be, it is plain that the assessors, in order to assess this road distinct from the franchise which is now taxed and the fee of the land, which concededly the relator does not own, must go through the mental operation of separating the stone and gravel which the relator put upon the surface from everything else. This, it seems to me, suggests the impossibility of assessing a highway as land. Such a thing as a road, whether good, bad or indifferent, was never intended to be assessed, and it seems that for a hundred years no one thought that it was. We are struggling now with that question for the first time, and it is sought to be justified by arguments which, when carried to their logical result, would seem to be absurd. In my opinion the relator has no interest in the highway in question that can be called real estate or land. Whatever right the relator has in this highway is not land in any legal or proper sense of the word, and it is wholly incapable of any valuation by any principle of valuation known to the law. It is impossible to conceive of such a thing as an assessment on land when there is no known rule by which its value can be ascertained. It is just as impossible to conceive of an assessment upon land when the assessment cannot be enforced by a sale of the thing assessed. In the case at bar no one has attempted to point out how, in case the relator does not pay the assessment, the land which it is said has been assessed can be sold. What is the thing which the public authorities are authorized to sell in case of a neglect or refusal of the relator to pay the assessment? What will the purchaser at such a sale acquire and how will he be put into possession? I am now speaking of a sale of something distinct from the fee which the relator does not own and distinct from the franchise which cannot be assessed by the local assessors or sold. It is quite obvious, I think, that the only way that the tax in question could be enforced is by treating it as a personal tax and suing the relator for its collection. But obviously that would be a total abandonment of the whole theory that it is a tax upon land, since, if it is, the way to collect it is to sell the land."

In the *Selkirk* case the rights of the corporation in the road were of a permanent character, while in this case the relator's

**246**   PEOPLE EX REL. BEAR MOUNTAIN H. R. B. CO. *v.* DIAMOND.

Supreme Court, December, 1925.                    [Vol. 126

rights are limited to a term of thirty years. The decision in the *Selkirk* case has not been overruled or modified, and is the law governing this aspect of the town of Cortlandt's case, and inasmuch as the road is included with the bridge and structures in a single assessment, the whole would be illegal, even though the town had the right to assess the bridge and other structures.

The town of Stony Point assessment includes the bridge from about the middle of the Hudson river to the west shore thereof; in other words, about one-half of the entire bridge extending half way across the river is included in the $1,027,316 assessment. It appears in this proceeding, without dispute, that the easterly boundary line of the town of Stony Point is the west shore of the Hudson river. Chapter 152 of the Laws of 1865 gives the easterly line as follows: " Thence along the west shore of said Hudson River southerly to the place of beginning." The law of this State is that a boundary line " along the shore " or " along the bank " of a river does not extend the grant to the middle of the stream. (*Child* v. *Starr*, 4 Hill, 369; *Starr* v. *Child*, 5 Den. 599; *Halsey* v. *McCormick*, 13 N. Y. 296; *City of Geneva* v. *Henson*, 195 id. 447.) It is only where a boundary line is given as a river or stream or as the middle of the river or stream that it carries to the center of such stream or river. Hence it follows that so much of the bridge as is beyond the west shore of the Hudson river is not within the territorial limits of the town of Stony Point and not within the jurisdiction of the assessors of that town, and where land outside of a town is included in a single assessment with lands within the town, the whole assessment is void. (*Saranac L. & T. Company* v. *Roberts*, 195 N. Y. 303.)

*The Town of Highlands Assessment.* When these proceedings first came on for hearing, the boundary line between the towns of Stony Point and Highlands was in dispute, although the respondents alleged in their return that the west anchorages, the westerly toll house and a substantial part of the bridge are in the town of Highlands. Since then, and for the purpose of these proceedings, and by consent of all the parties hereto, the line between these two towns has been definitely agreed upon and fixed by the county engineers of Orange and Rockland counties, and a map showing the true boundary line has been prepared and approved by these two engineers and put in evidence without objection, and no other proof on that question has been submitted by any party to these proceedings. That map, and the line thereby established, show that no part of the bridge or its anchorage or abutment or toll house or any structure connected therewith is within the town of Highlands except a cable chamber which is all under a

public roadway. There is nothing above the surface in the town of Highlands except a sidewalk of about fifteen by thirty feet in dimension. The assessment roll of the town of Highlands describes the relator's property within that town and covered by the assessment as " anchorage building and part of bridge in Orange county." As a matter of fact, no anchorage building nor any part of the bridge is in Orange county, and if they were, the description in the assessment roll is altogether too indefinite to sustain the assessment. The undisputed fact now is that only a few cubic yards of masonry under the surface is in the town of Highlands, besides the small piece of sidewalk, obviously not enough to justify an assessment of $350,000.

It follows that the three assessments must be declared illegal and void and stricken from said assessment rolls, with costs to the relator in each proceeding.