TEXAS TURNPIKE COMPANY ET AL V. DALLAS COUNTY ET AL

No. A-4749. Decided October 6, 1954.
(271 S.W. 2d Series 400)

Claude Gilmer, of Rock Springs, McCall, Parkhurst & Crowe, Millard Parkhurst, Roy G. Baker, Johnson & Abney, and J. Edward Johnson, all of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that under Article 6674v, Sections 5(n) and 18 of the Revised Civil Statutes of Texas the property acquired and hereafter to be acquired by the Turnpike companies was not public property devoted exclusively to public purposes within the perview of the Constitution of Texas, and that the title thereto remained in said companies. Adkins v. Kalter, 171 Ark. 1111, 287 S.W. 2d 388, 391; A. & M. Consol. Ind. Sch. Dist. v. City of Bryan, 143 Texas 348, 184 S.W. 2d 914; Bankers Union Life Ins. Co. v. Shepperd, Comptroller, 131 Texas 587, 117 S.W. 2d 770.

Henry Wade, Criminal Dist. Atty., Julien C. Hyer and J. J. Fagan, Assistants Criminal Dist. Atty., H. P. Kucera, City Atty., Ted P. MacMaster and Charles P. Atkinson, Assts. City Attorney, and A. J. Thuss, Jr., all of Dallas, Archie C. Price, of Grand Prairie, John Ben Shepperd, Atty. Gen., W. V. Geppert, L. P. Lollar and Milton Richardson, Assistants Attorney General, for respondents.

In reply to petitioners' propositions cited; St. Edwards College v. Morris, Tax Collector, 82 Texas 1, 17 S.W. 512; Norman v. Wilson, 41 S.W. 2d 331, err. ref.; Hedgecroft v. City of Houston, 150 Texas 654, 244 S.W. 2d 632.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Our principal question is whether property acquired by Texas Turnpike Company and Sam Houston Turnpike Corpora-

tion, private corporations, is exempt, under Article XI, Section 9, of the Constitution of Texas, from the payment of property taxes to the State of Texas and its various political subdivisions.

Suit was by petitioners for a declaratory judgment. The trial court held the property to be exempt from taxes. The Court of Civil Appeals held that it was not exempt. 268 S.W. 2d 767.

We agree with the conclusion of the Court of Civil Appeals.

■ The parties agree that to be exempt it must appear that the property is publicly owned and that it is used for a public purpose. Our conclusion is that the property involved in this case is not publicly owned and we need not inquire into the nature of its use. The opinion of the Court of Civil Appeals contains a rather full statement of the pertinent facts. Only those necessary to an understanding of our conclusion will be noticed here.

The petitioners were chartered as private corporations under Article 1302, Section 61, Vernon's Annotated Civil Statutes, for the purpose of building, acquiring, owning, operating and maintaining toll roads within the State of Texas. Property owned by such corporations was undoubtedly subject to taxation under the law as it existed at the time of their incorporation. Articles 7145 and 7159, Vernon's Annotated Civil Statutes. But petitioners contend that certain provisions of Article 6674v, Vernon's Annotated Civil Statutes, enacted by the 53rd Legislature, Acts 1953, Chapter 410, page 967, creating Texas Turnpike Authority, a state agency, when considered with their by-laws and certain escrow agreements, has had the effect of placing the taxable title to their property in the state.

Article 6674v authorizes Texas Turnpike Authority to construct and operate toll roads and turnpikes, but by Section 5(n) it is specifically prohibited from duplicating the facilities of any private toll road corporation chartered prior to March 1, 1953, which begins construction of a toll road within eighteen months of the effective date of the act, if such private corporation provides in its articles of incorporation, by-laws, or otherwise, that none of its net income or profits will be distributed to its shareholders or other private persons and that the title to all of its assets, after payment of indebtedness, will be conveyed to the State of Texas or to the county or counties in which the road is situated.

Section 18 of the Article provides the manner in which and the conditions under which the properties of private corpora-

tions complying with Section 5(n) will be transferred to Texas Turnpike Authority. It is provided that such corporations shall be obligated to make an irrevocable gift of all of their assets to the State of Texas and bind themselves to use all of their net income and profits to retire indebtedness; that upon the acquisition of real property they shall execute conveyances thereof to the State of Texas and place such conveyances in escrow with an agreement that the escrow agent shall deliver the instruments to the Authority upon compliance with the requirements and conditions set forth in the section. It then provides that "the equitable, beneficial and superior title to the property" of such corporations "shall be vested at all times in the State of Texas and shall constitute public property used for public purposes, subject only to any liens or encumbrances created against said property" by such corporations "to finance the acquisition, construction, maintenance or operation" of such roads.

The conditions on which the Authority is directed to accept, as a part of the State Highway system, toll roads built by private corporations are: 1. That at the time of acceptance the roads be free of indebtedness. 2. That no compensation be paid therefor by the state. 3. That at the time of acceptance the roads be in good condition and repair to the satisfaction of the State Highway Commission. 4. That the roads shall have been constructed and maintained in a manner equal or superior to standards of the State Highway Commission. 5. That in the letting of contracts for construction and maintenance of the roads procedures of the State Highway Commission shall have been followed.

Petitioners have complied with the requirements of Section 5(n) and have executed escrow agreements with the Authority, contracting that the "equitable, beneficial and superior title" to their real property is in the State of Texas, and have placed and will place in escrow deeds conveying such property to the State of Texas, to be delivered upon the conditions set out above. The agreements further provide that in the event petitioners should abandon construction of the roads the deeds will be returned to them upon releases being executed by the Authority.

2 Under the foregoing facts is the property in question "publicly owned" so as to be exempt from taxes under Article XI, Section 9 of the constitution? Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on facts, that may not be created or conferred by mere legislative, or even contractual, declaration. If the state does not in fact own the taxable title to the property, neither the Legis-

lature by statute, nor the petitioners and the Authority by contract, may make the state the owner thereof by simply saying that it is the owner.

The petitioners own and will own the legal title to the property acquired and to be acquired. They are, and will be, in possession and control of the property. They have placed, and will place, deeds conveying the legal title to the state in escrow, but the deeds are to be delivered and to take effect only upon certain conditions, some one or more of which may never occur or exist. Under these facts petitioners contend that the state is the owner of the equitable title to the property and that the equitable title is the taxable title. Undoubtedly the equitable title is the taxable title in those situations in which he grantee takes possession under a deed in which a vendor's lien is reserved or under a contract of sale by which the vendee is obligated to pay the purchase price. Taber v. State, 38 Texas Civ. App., 235, 85 S.W. 835, writ refused; Harvey v. Provident Inv. Co., Texas Civ. App., 156 S.W. 1127, writ refused; Leonard v. Kendall, Texas Civ. App., 5 S.W. 2d 197, writ dismissed. Undoubtedly, also, this court has said that the grantee in a conveyance held in escrow is the owner of the equitable title to the property conveyed. Cowden v. Broderick & Calvert, 131 Texas 434, 114 S.W. 2d 1166, 117 A.L.R. 61; Alsworth v. Ellison, Texas Civ. App., 27 S.W. 2d 639, writ refused. But in the latter cases taxable ownership was not the issue. Moreover, in such cases delivery of the conveyance by the escrow agent was dependent upon performance of certain conditions by the grantee; the grantee had it within his power to perform the conditions and compel the delivery of the conveyance transferring legal title. That is not true in this case. Here, the right of the state, as grantee, to acquire the deeds and the legal title they convey is entirely dependent upon performance of conditions by the grantors. The state owns neither the legal nor the equitable title. It holds at most a right to become the owner of the legal title under certain conditions. Its interest in the property is not a vested interest; it is purely contingent. If, instead of the state, another private corporation were the grantee in the deeds, would the grantee's interest in the property be taxable? It would not because the grantee's interest would be purely contingent. Thus it is held that a contingent remainder in property is not a taxable title. Nation v. Green, 188 Ind. 697, 123 N.E. 163. Neither is a possibility of reverter. Mayor and Council of City of Gainesville v. Brenau College, 150 Ga. 156, 103 S.E. 164. If the agreements made by petitioners would not create a taxable ownership in a

private grantee, it is difficult to see how they could create a tax-exempt ownership in the State of Texas.

The toll roads proposed by petitioners are mammoth projects which will cost many millions of dollars. If their construction is begun but abandoned, or if bondholders should be compelled to foreclose their liens and take over the properties, or if the methods and procedures of the State Highway Department are not followed in the letting of contracts for construction and maintenance, or if the roads are not constructed and maintained in a manner equal or superior to the standards of the State Highway Commission, or if the roads are not kept in good condition and repair to the satisfaction of the State Highway Commission—in any of these possible situations, the State could not become the owner of the roads under the express provisions of the statute. It is not enough that petitioners' officers and directors assure us that these contingencies will not happen, or even that they have taken all possible steps to guard against their happening; they yet remain possibilities and as long as this is so the state's interest in the property is purely contingent and the taxable ownership is in petitioners.

There are no cases squarely in point. Petitioners rely principally on Galveston Wharf Co. v. City of Galveston, 63 Texas 14; People Ex. Rel. Bear Mountain Hudson River Bridge Co. v. Diamond, 126 Misc. 239, 213 N.Y. Supp., 258, affirmed, 222 App. Div. 756, 225 N.Y. Supp., 886, and Village of Hibbing v. Commissioner of Taxation, 217 Minn. 528, 14 N.W. 2d 923, 156 A.L.R. 1294. The facts in those cases are not analagous and they are not controlling.

Galveston Wharf Co. v. City of Galveston involved the right of the city to tax a one-third interest in the properties of the Galveston Wharf Company. The right turned on the construction of a prior agreed judgment of a court, confirmed by the legislature, fixing the interest of the city and of private shareholders in the corporation and in its properties. This court held that the judgment, properly interpreted, vested title to one-third of the properties of the corporation in the city, rendering such one-third interest tax exempt. It further held that even if title to the one-third of the properties was not vested in the city, it nevertheless was the beneficial owner of one-third of the properties through its ownership of one-third of the corporate stock and could tax only the twothirds interest owned by private shareholders with proper adjustment of dividends. Obviously, the interest of the city was vested and absolute, not contingent.

In the second case a bridge company was formed for the purpose of constructing, maintaining and operating a toll bridge for a period of thirty years, after which all rights of the company would terminate and the bridge would become the property of the state without payment of compensation therefor. The bridge and its approaches were built on land owned by the State of New York. The question was whether the bridge was taxable to the company as realty. The court held that it was not since it was a permanent structure built on state owned land without right of removal, thereby becoming a part of the realty owned by the state. The decision has no relation to the question in this case.

The tax exemption allowed in the Hibbing case turned not upon public ownership but upon public use, it being held that a hospital conveyed to a grantee for public use was tax exempt although on the critical taxing date the contract for the conveyance had not been fully executed and preparations for the use of the property by the grantee had not been completed.

The interest of the State of Texas in the property involved is more nearly analagous to that of the United States in the property involved in Southern Forest Land Co. v. Amite County, 176 Miss. 130, 168 So. 286, and Bemis Hardwood Lbr. Co. v. Graham County, 214 N.C. 167, 198 S.E. 843, cited by the Court of Civil Appeals, in which it was held that land in the possession of the United States government under an option to purchase was not exempt from local taxes. Closely analagous on the facts, and persuasive, are the other two cases cited by the Court of Civil Appeals: Carolina-Virginia Coastal Highway v. Coastal Turnpike Authority, 237 N.C. 52, 74 S.E. 2d 310, 319, and Appeal of City of Dubuque Bridge Commission, 232 Iowa 112, 5 N.W. 2d 334, 343.

Having held that the property is not tax exempt, we are in agreement with the holding of the Court of Civil Appeals that Article 6674v is not unconstitutional on the ground that it confers a tax-exempt status on the property. The other constitutional questions raised by respondents are not sufficiently briefed in this court to require decision and they are not decided.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered October 6, 1954.