March 4, 2003

The Honorable Jerry Patterson
Commissioner
Texas General Land Office
1700 North Congress Avenue
Austin, Texas 78701-1495

Opinion No. GA-0026

Re: Whether foreclosed properties in the
Veterans' Housing Assistance Program are
exempt from ad valorem property taxes
(RQ-0594-JC)

Dear Commissioner Patterson:

Your predecessor in office asked whether foreclosed properties in the Veterans' Housing
Assistance Program are exempt from ad valorem property taxes.[1]

The Veterans' Land Board (the "Board"), a state agency composed of the Commissioner of
the General Land Office and two Texas citizens, administers the constitutionally established
Veterans' Housing Assistance Fund (the "Fund"). See TEX. CONST. art. III, § 49-b(a), (f); see also
TEX. NAT. RES. CODE ANN. § 161.011(Vernon 2001). The Fund comprises, in general, the Board's
interest in home mortgage loans made with Fund monies; proceeds derived from the disposition of
the Board's interest in home mortgage loans; proceeds of bonds issued to provide money to make
home mortgage loans; investment earnings; and other amounts received by the Board as a result of
making the home mortgage loans. See TEX. CONST. art. III, § 49-b(o); see also TEX. NAT. RES. CODE
ANN. § 162.002(a)(7) (Vernon 2001). The Fund is established for the purpose of making home
mortgage loans to veterans for housing located within the state. See TEX. CONST. art. III, § 49-b(f).

The article III, section 49-b home mortgage loans are made or acquired in accordance with
chapter 162 of the Natural Resources Code, entitled the Veterans' Housing Assistance Program (the
"Program"). See TEX. NAT. RES. CODE ANN. §§ 162.001-.052 (Vernon 2001 & Supp. 2003).
Section 162.014 of the Natural Resources Code specifically requires that any such loan be "secured
by a mortgage, deed of trust, or other lien on the home." Id. § 162.014 (Vernon 2001). And section
162.017 authorizes the Board to adopt procedures for "foreclosure and resale of homes financed with
a loan" under chapter 162. Id. § 162.017. Your predecessor asked about the taxability of property
that is foreclosed upon when a borrower defaults on a home mortgage loan acquired or made under

---

[1]See Letter from the Honorable David Dewhurst, Commissioner/Chairman Veterans' Land Board, Texas
General Land Office, to the Honorable John Cornyn, Texas Attorney General (Aug. 19, 2002) (on file with Opinion
Committee) [hereinafter Request Letter].

the Program. As we understand it, the Board acquires full title to the property and holds the property pending its resale.[2]

All real property is taxable unless exempt as required or permitted by the Texas Constitution. *See* TEX. CONST. art. VIII, § 1(b). Article VIII, section 2 provides that "the legislature may, by general laws, exempt from taxation public property used for public purposes." *Id.* art. VIII, § 2(a); *see also id.* art. XI, § 9 ("[t]he property of counties, cities and towns, owned and held only for public purposes, . . . and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation."). Pursuant to this provision, the legislature enacted section 11.11(a) of the Tax Code, which provides in part that "[e]xcept as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes." TEX. TAX CODE ANN. § 11.11(a) (Vernon 2001); *see also* Tex. Att'y Gen. Op. No. JM-1049 (1989) at 2-3 (legislature enacted section 11.11 pursuant to article VIII, section 2).

The question presented here is whether the holding of the foreclosed property by the Board pending the property's resale constitutes a "public purpose" under article VIII, section 2 and section 11.11(a) of the Tax Code. For tax-exemption purposes, the Texas Supreme Court has said that public property is used for public purposes if it is used primarily "for the health, comfort, and welfare of the public." *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915 (Tex. 1945). "It is not essential that it be used for governmental purposes. It is sufficient if it be property which all of the public has a right to use under proper regulations." *Id.* at 915 (citations omitted).

Attorney General Opinion DM-187 determined that, in general, "where the state or its political subdivisions are authorized to acquire and dispose of property pursuant to express statutory authorization, the acquisition and use of the property pending its disposal is prima facie a public purpose." Tex. Att'y Gen. Op. No. DM-187 (1992) at 2. The opinion relied on Texas case law uniformly holding that property acquired by political subdivisions through tax foreclosures or tax sales and held for resale constitutes a public purpose—collection of taxes—under the constitutional and statutory tests for tax exemption. *See State v. City of San Antonio*, 209 S.W.2d 756, 757-58 (Tex. 1948); *State v. Moak*, 207 S.W.2d 894, 897 (Tex. 1948); *City of Austin v. Sheppard*, 190 S.W.2d 486, 488 (Tex. 1945); *Klein Indep. Sch. Dist. v. Appraisal Review Bd.*, 843 S.W.2d 201, 202 (Tex. App.–Texarkana 1992, no writ). Attorney General Opinion DM-187 concluded, in response to the specific question asked, that contraband property seized by peace officers and forfeited to the state pursuant to chapter 59 of the Code of Criminal Procedure was tax exempt so long as it was used for public purposes. Tex. Att'y Gen. Op. No. DM-187 (1992) at 3. The forfeited property, the opinion further concluded, was used for public purposes because chapter 59 required that it be used only by law enforcement agencies for official purposes or sold and the proceeds deposited in the state treasury or distributed for law enforcement purposes, and thus it was "used to promote the health, comfort, and welfare of the public." *Id.* at 5; *see also A. & M. Consol. Indep. Sch. Dist.*, 184 S.W.2d at 915 (explaining that public property is used for public purposes if it is used primarily "for the health, comfort, and welfare of the public").

---

[2]*See* Memorandum from Charles Richards, Ingrid Hansen, Roberto Guadiana, Veterans' Land Board, to Opinion Committee, Texas Attorney General (Aug. 8, 2002) (attachment to Request Letter) [hereinafter VLB Brief].

More specifically, Attorney General Opinion JM-1085 concluded that land forfeited to the Board under the Veterans' Land Program was tax-exempt. *See* Tex. Att'y Gen. Op. No. JM-1085 (1989). Article III, section 49-b also establishes the Veterans' Land Fund and the Veterans' Land Program. *See* TEX. CONST. art. III, § 49-b; TEX. NAT. RES. CODE ANN. §§ 161.001-.403 (Vernon 2001 & Supp. 2003). The Board, under this program, uses public funds to purchase land and then resells the land to veterans under a contract for deed; the contract delivers equitable title and possession to the veteran, but the state retains legal title until the contract is paid in full. *See* Tex. Att'y Gen. Op. No. JM-1085 at 1; VLB Brief, *supra* note 2, at 2. If a purchaser defaults on a contract, the Board may declare forfeiture and take possession of the property. *See* Tex. Att'y Gen. Op. No. JM-1085 at 1. Attorney General Opinion JM-1085 refuted the suggestion that the forfeited land was taxable because it was used for a non-public purpose as described in 11.11(d) of the Tax Code. *See* Tex. Att'y Gen. Op. No. JM-1085 at 4 (The Board "does not provide 'residential housing for compensation to members of the public . . . .' Rather, it provides the financing needed to purchase private residential housing, and it offers it only to qualifying veterans of the United States' armed forces."). The forfeited real property, the opinion noted, was used precisely for the public purpose for which it was acquired originally, *i.e.*, "the creation of a 'land fund' to facilitate the purchase of real property by veterans through the granting of low-interest loans." *Id.* Moreover, the opinion noted, article III, section 49-b itself exempts real property comprising the Veterans' Land Fund from ad valorem property taxation after the purchaser of the land defaults and title to the property reverts to the state. *See id.*

We similarly conclude that the foreclosed homes owned and held by the Board pending resale under the Program are tax-exempt because they are used for public purposes, *i.e.*, collection on home mortgage loans to repay the Fund. *See* Tex. Att'y Gen. Op. No. DM-187 (1992) at 2; Tex. Att'y Gen. Op. No. JM-1085 (1989) at 2-3. Under the Program, the Board is expressly authorized to make loans to qualified veterans for the purchase of homes. *See* TEX. CONST. art. III, § 49-b(f); TEX. NAT. RES. CODE ANN. § 162.011 (Vernon 2001). The Board is also expressly required to secure the loans by a mortgage, deed of trust, or other lien on the home. *See* TEX. NAT. RES. CODE ANN. § 162.014 (Vernon 2001). And the Board is expressly authorized to adopt procedures for foreclosure and resale of homes financed with loans under the program in the event of default. *See id.* § 162.017.

We note that neither article III, section 49-b of the Texas Constitution, nor chapter 162 of the Natural Resources Code, expressly provide that proceeds of the resale constitute a part of the Fund and must be used to make or acquire other loans for veteran housing. But that is precisely what the constitution and statute contemplate. First, under article III, section 49 and chapter 162, monies in the Fund may be used only to make home mortgage loans and pay expenses related to making such loans. *See* TEX. CONST. art. III, § 49-b(f); TEX. NAT. RES. CODE ANN. § 162.011 (Vernon 2001). Second, both the Board's lien interest in loans made with Fund monies, TEX. CONST. art. III, § 49-b(o)(1), and the Board's equitable interest in homes encumbered under the Program and attributable to the Fund, TEX. NAT. RES. CODE ANN. § 162.002(7) (Vernon 2001), comprise the Fund. And, "proceeds derived from the sale or disposition of the Board's interest in home mortgage loans" also comprise the Fund. TEX. CONST. art. III, § 49-b(o)(2).

The fact that article III, section 49-b does not, with respect to the Program, contain an express provision stating that the foreclosed homes constitute a part of the Fund and are held for "governmental purposes" is not material to their taxability. *Compare* TEX. CONST. art. III, § 49-b(f) (Housing Assistance Fund), *with id.* § 49-b(h) (Land Assistance Fund). The absence of such a statement does not change the otherwise public ownership and public use of the properties necessary for tax exemption under article VIII, section 2 of the constitution and section 11.11(a) of the Tax Code. *Cf. Tex. Turnpike Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954) ("Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on the facts, that may not be created or conferred by mere legislative, or even contractual, declaration."); *Dallas County v. Tex. Turnpike Co.*, 268 S.W.2d 767 (Tex. Civ. App.–Dallas 1954), *aff'd*, 271 S.W.2d 400 (Tex. 1954) (whether a particular property is used for public purposes is a question of fact to be determined on a case-by-case basis). We conclude that foreclosed properties held by the Veterans' Land Board under the Veterans' Housing Assistance Program are exempt from ad valorem property taxes while they are owned and held by the Board pending resale.

## S U M M A R Y

Foreclosed properties held by the Veterans' Land Board under the Veterans' Housing Assistance Program, which authorizes use of public funds to make home mortgage loans to qualified veterans for housing, are exempt from ad valorem property taxes while they are owned and held by the Board pending resale.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee