## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 26, 2007

The Honorable Tim Curry
Tarrant County Criminal District Attorney
401 West Belknap Street
Fort Worth, Texas 76196-0201

Opinion No. GA-0522

Re: Legal and tax status of land and improvements leased by a development corporation—created under Texas Revised Civil Statutes article 5190.6, section 4B—to private commercial enterprises and used for private commercial purposes (RQ-0490-GA)

Dear Mr. Curry:

You ask about the legal and tax-exempt status of land and improvements owned by the Westworth Redevelopment Authority (the "Authority"), but leased to private commercial enterprises and used for their private commercial purposes.[1] You inform us that the City of Westworth Village established the Authority under section 4B of article 5190.6 of the Texas Revised Civil Statutes, the Development Corporation Act of 1979 (the "Act"). *See* Request Letter, *supra* note 1, at 1–2. The Authority executed agreements with the United States Department of Defense to redevelop parts of former Carswell Air Force Base for nonmilitary, residential, and commercial uses. *See id.* at 2. As part of that redevelopment effort, the Authority sold some properties to commercial enterprises. *See id.* But more recently the Authority has engaged in lease transactions: The Authority declares an undeveloped property that it owns "to be for a public 'project' and, therefore, tax-exempt" and leases the property to a partnership comprising the Authority and a commercial developer, which then subleases the property to private commercial enterprises. *Id.* at 2–3. "In some instances, these subleases appear to contemplate 'build-to-suit' arrangements, whereby commercial enterprises sublease the improvements, which, along with the underlying real property, remain titled in the [Authority]." *Id.* The consequences of these transactions, you state, are twofold. *See id.* First, because the partnership does not have to pay taxes on the land and improvements, the partnership can sublease the property at more favorable rates than private developers that must include in their lease rates the required taxes. *See id.* Additionally, local taxing units may lose substantial tax revenues on arguably privately used properties. *See id.* at 3–4.

---

[1]*See* Letter from Honorable Tim Curry, Tarrant County Criminal District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1, 6–7 (May 15, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

You ask approximately eighteen questions related to the Authority's lease transactions and the private commercial use of the leased properties. *See id.* at 6–7. We consolidate your legal queries as follows:

> 1. Whether the land and improvements leased by the Authority and used for private commercial purposes constitute "projects" under the terms of section 4B(k) of the Act, which exempts certain section 4B projects from ad valorem property taxes, and whether the Authority's board of directors has the discretion to make that determination.
>
> 2. Whether section 4B(k) of the Act is constitutional insofar as applied to the leased projects used for private commercial rather than public purposes.
>
> 3. Whether the Tarrant County Appraisal District, a taxing unit within which the projects are located, or a taxpayer may challenge the projects' tax exemptions. You also ask about the procedures for challenging the tax exemption.

*See id.* As a threshold matter, whether a particular property constitutes a "project" under the Act involves factual determinations. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 2(11), 4B(a) (Vernon Supp. 2006); *see also* Tex. Att'y Gen. Op. No. JC-0362 (2001) at 5 ("the determination of whether a particular project will promote the economic development purposes of the Act is, in general, a question of fact within the discretion of the board of directors of the development corporation in the first instance"). Similarly, whether a particular property is exempt from taxation depends on the facts of the particular situation. *See, e.g., Tex. Tpk. Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954). Because you do not ask about a particular property and because this office does not determine questions of fact in an attorney general opinion, we can only summarize here the general legal standards that must be applied to the facts of a particular case. *See* Request Letter, *supra* note 1, at 1, 6–7; *see also, e.g.,* Tex. Att'y Gen. Op. No. GA-0106 (2003) at 7 ("This office cannot find facts or resolve fact questions in an attorney general opinion.").

## I.    Statutory Background

The stated purpose and intent of the Act is to promote economic development by providing means to secure and retain business and commercial enterprises that will create jobs. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 3 (Vernon Supp. 2006); *see also* TEX. CONST. art. III, § 52-a (declaring economic and commercial development and diversification to be public purposes). To that end, section 4B of the Act authorizes eligible cities to create nonprofit development corporations governed by that section to undertake and finance authorized "projects." *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)–(b) (Vernon Supp. 2006). A section 4B development corporation has all the powers granted by both the Act—under the general provisions and under section 4B—and the Texas Non-Profit Corporation Act. *Id.* § 23(a); *see also id.* § 22 (stating that a development "corporation is not intended to be and shall not be a political subdivision or a political corporation

within the meaning of the constitution and the laws of the state"). As relevant here, those powers specifically include selling or leasing "to a user all or any part of any project . . . upon such terms and conditions as its board of directors may deem advisable and not in conflict with . . . this Act." *Id.* § 23(a)(3). And the term "user" specifically includes "an individual, partnership, corporation, or any other private entity, whether organized for profit or not for profit." *Id.* § 2(15).[2]

Section 4B(k) of the Act, which is at the crux of your request, exempts from ad valorem property taxes, including taxes on leasehold interests, projects added to the definition of that term by section 4B(a) and owned by a section 4B development corporation. *See id.* § 4B(k). The statute provides as follows:

> The legislature finds for all constitutional and statutory purposes that *projects of the types added to the definition of that term by Subsection (a) of this section* are owned, used, and held for public purposes for and on behalf of the eligible city incorporating the corporation, and except as otherwise provided by this subsection,[3] Section 23(b) of this Act[4] and Section 25.07(a), Tax Code,[5] are not applicable to leasehold or other possessory interests granted by the corporation during the period projects are owned by the corporation on behalf of the eligible city. *Projects are exempt from taxation under Section 11.11, Tax Code, for that period.*

*Id.* (emphasis added) (footnotes added).

---

[2]Section 2(15) as added by Act of May 20, 1999, 76th Leg., R.S., ch. 973, § 1, 1999 Tex. Gen. Laws 3722, 3723.

[3]The leasehold tax exemption does not apply to a development corporation created by a city in which the city residents have not authorized the levy and collection of an additional sales and use tax for the benefit of the development corporation pursuant to section 4B. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(k) (Vernon Supp. 2006). The City of Westworth's residents have authorized an additional sales and use tax for the benefit of the Authority. *See* Request Letter, *supra* note 1, at 4.

[4]Section 23(b) provides that a development corporation shall not have the power to operate a project (unless the project is a closed or realigned military installation or facility) as a business other than as a lessor, seller, or lender. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 23(b) (Vernon Supp. 2006). And thus the user pursuant to any lease, sale, or loan agreement is the owner of the project for tax purposes. *See id.*

[5]Tax Code section 25.07 generally requires a leasehold or possessory interest in real property that is exempt from taxation to the owner of the encumbered property to be listed in the name of the possessory-interest owner if the duration of the interest is at least one year. *See* TEX. TAX CODE ANN. § 25.07(a) (Vernon Supp. 2006). "[T]he 'listing' provided for in section 25.07 has the effect, in an appropriate instance, of imposing tax liability." *County of Dallas Tax Collector v. Roman Catholic Diocese*, 41 S.W.3d 739, 744–45 (Tex. App.—Dallas 2001, no pet.).

## II.    Analysis

### A.    Whether the leased land and improvements used for private commercial purposes constitute section 4B(k) projects

You first ask whether the land and improvements leased by the Authority and used for private commercial purposes constitute section 4B(k) projects. *See* Request Letter, *supra* note 1, at 6. Under section 4B(k), projects of the type added to the definition of that term by section 4B(a) while held by a development corporation are tax exempt under section 11.11 of the Tax Code. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(k) (Vernon Supp. 2006); *see also* TEX. TAX CODE ANN. § 11.11 (Vernon Supp. 2006) (exempting publicly owned property used for public purposes).

Section 4B(a)(2) provides that for the purposes of section 4B, "project"[6] includes "land, buildings, equipment, facilities, and improvements *found by the board of directors* [of the development corporation] to . . . be required or suitable for" or that promote the development of, in general, (A) sports, entertainment, tourist, public park purposes and events, and related purposes; (B) "new or expanded business enterprises *that create or retain primary jobs*, including a project to provide public safety facilities, streets and roads, drainage and related improvements, . . . general municipally owned improvements, . . . and *any other project that the board in its discretion determines promotes or develops new or expanded business enterprises that create or retain primary jobs*"; (C) affordable housing; (D) water supply facilities; or (E) water conservation programs. TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2)(A)–(E) (Vernon Supp. 2006) (emphasis added); *see also id.* § 4B(a)(2)(F). A primary job is one that is "available at a company for which a majority of the products or services . . . are ultimately exported to regional, statewide, national, or international markets infusing new dollars into the local economy," and included in the named sectors of the North American Industry Classification System (NAICS). *Id.* § 2(17)(A)(i)–(ii).[7]

Additionally, section 4B(a)(3) provides that for a corporation created by an eligible city with a population of 20,000 or fewer persons, "'project' shall also include the land, buildings, equipment, facilities, expenditures, targeted infrastructure, and improvements *found by the board of directors to promote new or expanded business development*." *Id.* § 4B(a)(3) (emphasis added). Significantly, this subsection by its terms does not require that the authorized projects create primary jobs. *See id.*; *see also id.* § 4B(a)(4) (providing for projects in a "landlocked community"). This provision would be applicable here because the City of Westworth Village has a population of fewer than 20,000 persons. *See* UNITED STATES CENSUS BUREAU, 2000 CENSUS POPULATION: POPULATION FINDER (population of City of Westworth Village, Texas is 2,124), *available at* http://www.census.gov/ (last visited Jan. 31, 2007).

---

[6]Section 2(11) of the Act contains a general definition of "project." *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11) (Vernon Supp. 2006).

[7]The named sectors are crop production, animal production, forestry and logging, commercial fishing, agriculture and forestry support activities, mining, utilities, manufacturing, wholesale trade, transportation and warehousing, information, financial and insurance activities, scientific research and development, management of companies and enterprises, telephone call centers, correctional institutions, and national security. *Id.* § 2(17)(A)–(B).

The list of projects added to the Act's general definition of that term by section 4B(a) is long and broad in scope. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2)–(3) (Vernon Supp. 2006). While section 4B authorizes public projects, it plainly does not limit itself to such projects. *See id.* Consistently with the economic development purposes of the Act, section 4B authorizes a development corporation to undertake projects that may be sold or leased for private commercial use. *See id.* §§ 2(15)[8] (defining "user" to include a private entity), 23(a)(3)–(4) (authorizing development corporation to sell or lease projects to users), 4B(a)(2)–(3) (listing authorized projects); *see also W. Seafood Co. v. City of Freeport*, 346 F. Supp. 2d 892, 898 (S.D. Tex. 2004), *affirmed in part, and vacated and remanded in part by W. Seafood Co. v. United States*, 2006 WL 2920809 (5th Cir.2006) (not designated for publication) (concluding that a private marina development falls within the definition of project in sections 2(11) and 4B(a)(2) of the Act).

In answer to the first question, then, under the terms of section 4B(k) of the Act, land and improvements for the specifically listed purposes in section 4B(a)(2) of the Act constitute projects eligible for tax exemption. Additionally, any other land and improvement that the Authority's board of directors determines promote or develop business enterprises in accordance with section 4B(a)(3) are such eligible projects. Land and improvements meeting the section 4B(a) standards and used for private commercial purposes would constitute eligible projects under section 4B(k). But whether a particular property or improvement constitutes a "project" under these standards is a question of fact. *See, e.g.*, Tex. Att'y Gen. Op. No. JC-0362 (2001) at 5. The Act grants the Authority's board of directors the discretion to make that determination in the first instance subject to judicial review for abuse of discretion. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(a)(2)–(3) (Vernon Supp. 2006); *Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) ("[W]here the law visits upon a governing body the duty to exercise its sound judgment and discretion, courts have no right to interfere so long as such body acts lawfully. . . . [I]f such body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge . . . .") (quoting *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936)); *see also* Tex. Att'y Gen. Op. No. JC-0362 (2001) at 5 ("the determination of whether a particular project will promote the economic development purposes of the Act is, in general, a question of fact within the discretion of the board of directors of the development corporation in the first instance").

**B.    Whether section 4B(k) is constitutional insofar as applied to leased projects used for private commercial rather than public purposes**

Section 4B(k) of the Act provides that "for all constitutional and statutory purposes[,] projects of the types added to the definition of that term by Subsection (a) of this section are owned, used, and held for public purposes for and on behalf of the eligible city incorporating the corporation," and they "are exempt from taxation under Section 11.11, Tax Code, for that period." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(k) (Vernon Supp. 2006).

Article VIII, section 1 of the Texas Constitution commands that all real property and tangible personal property is taxable unless exempt as required or permitted by the Texas Constitution. *See*

---

[8]*See supra* note 2.

TEX. CONST. art. VIII, § 1(b). Article VIII, section 2(a) provides that the "the legislature may, by general laws, exempt from taxation public property used for public purposes." TEX. CONST. art. VIII, § 2(a); *see also id.* art. XI, § 9 ("The property of counties, cities and towns, owned and held only for public purposes, . . . and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation . . . ."). Article VIII, section 2(a) "authorizes the Legislature to exempt only publicly owned property used for public purposes." *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 912 (Tex. 1972); *see also N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991) (stating that statutory definitions and standards cannot replace constitutional requirements). Pursuant to article VIII, section 2(a), the Legislature enacted section 11.11 of the Tax Code. *See Hays County Appraisal Dist. v. Sw. Tex. State Univ.*, 973 S.W.2d 419, 421 n.1 (Tex. App.—Austin 1998, no pet.); *see also* Tex. Att'y Gen. Op. No. JM-1049 (1989) at 2–3 (Legislature enacted section 11.11 pursuant to article VIII, section 2). Section 11.11(a) provides that "property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes." TEX. TAX CODE ANN. § 11.11(a) (Vernon Supp. 2006).

The issue here is limited to whether section 4B(k) projects used for private commercial purposes meet the public purpose use requirement of Texas Constitution article VIII, section 2 and Tax Code section 11.11(a).[9] For tax exemption purposes, the Texas Supreme Court has said that public property is used for public purposes if it is used primarily "for the health, comfort, and welfare of the public." *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915 (Tex. 1945). "It is not essential that it be used for governmental purposes. It is sufficient if it be property which all of the public has a right to use under proper regulations." *Id.* (citations omitted). Property used for the private commercial purposes of a lessee is not used primarily for the health, comfort, and welfare of the public, and all the public does not have a right to use it. *See City of Beaumont v. Fertitta*, 415 S.W.2d 902, 908–09 (Tex. 1967) (stating that city-owned property used by lessee for private commercial purposes cannot be said to be used for public purposes under the *A. & M. Consol. Indep. Sch. Dist.* definition). The fact that the public entity may use the revenues derived from the lease for public purposes is insufficient to qualify the property for tax exemption. *See id.* at 908. Thus section 4B(k) projects leased to private commercial enterprises and used for private commercial purposes would not be used for public purposes under the established constitutional test. And section 4B(k)'s statement—that all projects added to the definition of that term by section 4B(a)(2) are used for public purposes—would not alone replace or substitute for this constitutional requirement. *Cf. N. Alamo Water Supply Corp.*, 804 S.W.2d at 899 ("The assertion that statutory provisions can replace constitutional requirements is erroneous. . . . Before an organization can be considered for qualification for tax exempt status under section 11.18 of the . . . Tax Code, [it] must

---

[9]You suggest that section 4B(k) as applied to exempt from taxation projects used for private commercial purposes may violate the article VIII, section 1 requirement that taxation be equal and uniform and the article III, section 52(a) prohibition against lending of credit. *See* Request Letter, *supra* note 1, at 7. In the context of your letter, we assume that these suggestions are premised on the argument that the privately used projects are not exempt under article VIII, section 2 because they are not used for public purposes. Additionally, you do not ask and we do not address whether the property here is publicly owned as required by Texas Constitution article VIII, section 2(a) or owned by "this state or a political subdivision of this state" as required by Tax Code section 11.11(a). *See* TEX. TAX CODE ANN. § 11.11(a) (Vernon Supp. 2006).

first meet the applicable constitutional requirements which entitle those organizations to seek the exemption." (citations omitted)); *Tex. Tpk. Co.*, 271 S.W.2d at 402 ("Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on facts, that may not be created or conferred by mere legislative, or even contractual, declaration."); *Hous. Auth. v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940) ("Mere fiat, whether pronounced by the Legislature or by a subordinate agency, does not make that a public use which is not such in fact, and the question (always present) as to the true nature of the use is one of law.").

However, because such section 4B(k) projects are authorized to promote economic development, we must consider whether Texas Constitution article III, section 52-a—deeming economic development measures public purposes for the expenditure of public funds—expands the definition of public purpose for tax exemption purposes. Article III, section 52-a provides that:

> Notwithstanding any other provision of this constitution, the legislature may provide for the creation of programs and the making of loans and grants of public money . . . for the public purposes of development and diversification of the economy of the state, the elimination of unemployment or underemployment in the state . . . or the development or expansion of transportation or commerce in the state.

TEX. CONST. art. III, § 52-a.

Article III, section 52-a by its terms creates exceptions to the preexisting constitutional prohibitions against the use of public funds and resources to aid private persons and promote economic development. *See id.; see also Barrington*, 338 S.W.2d at 140 (stating that municipal funds and credit may not be used to aid private enterprise simply to obtain the general benefits resulting from operation of such enterprise); *see also* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.J. Res. 5, 70th Leg., R.S. (1987) at 1–2 (stating that the amendment is "necessary to override certain current constitutional provisions that might be construed as prohibiting economic development investments by state or local governments that aided individual companies"); TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS AND REFERENDA 14 (Sept. 1987) (stating that proposed amendment would resolve questions under article III, sections 51 and 52 and make clear that public funds could be used to make loans and grants to private businesses to aid economic development).

Article III, section 52-a does not by its terms directly exempt from taxation properties used for economic development purposes or expand the public purposes for which the Legislature may exempt such property pursuant to article VIII, section 2. *See* TEX. CONST. art. III, § 52-a; *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) (stating that when interpreting the state constitution, we must look at its literal text and give effect to its plain language). In fact, it makes no reference to taxation or exemption. *See* TEX. CONST. art. III, § 52-a. And to date no Texas court has addressed whether article III, section 52-a expands the definition of public purpose for tax

exemption purposes.[10] In the absence of express constitutional language and binding judicial authority, we decline to construe article III, section 52-a to expand the definition of public purpose for tax exemption purposes. *See N. Alamo Water Supply Corp.*, 804 S.W.2d 899 ("exemptions from taxation are not favored by the law and will not be favorably construed").[11]

In answer to the second question, we conclude that a court could determine that section 4B(k) is unconstitutional as applied to exempt from ad valorem taxation particular projects used for private commercial purposes that do not meet the established public purpose use test, i.e., used primarily for the health, comfort, and welfare of the public that all of the public has a right to use under proper regulations.

## C.    Whether the Tarrant County Appraisal District, a taxing unit, or a taxpayer may challenge the projects' tax exemptions

Finally, you ask whether the Tarrant County Appraisal District, a taxing unit, or a taxpayer may challenge the tax-exempt status of the land and improvements designated as section 4B(k) projects. *See* Request Letter, *supra* note 1, at 6–7. You also ask about the procedures for challenging the projects' tax-exempt status. *See id.* at 7.

The Tax Code provides the procedures for challenging tax exemptions. It establishes an appraisal district in each county and requires each district to appraise property for each taxing unit that imposes ad valorem taxes on property in the district. *See* TEX. TAX CODE ANN. § 6.01(a)–(b) (Vernon 2002). The appraisal district's board of directors appoints the chief appraiser who is the chief administrator of the appraisal office. *See id.* § 6.05(c) (Vernon Supp. 2006). The Tax Code also establishes an appraisal review board for each district, which is charged with ensuring that

---

[10]The Arkansas Supreme Court has construed a constitutional amendment authorizing economic development financing to allow tax exemption of publicly owned property (financed under the statutory economic development program) used for private commercial purposes under the state's constitutional provision exempting public property used exclusively for public purposes. *See Pulaski County v. Jacuzzi Bros. Div.*, 964 S.W.2d 788 (Ark. 1998). In 2004, the United States District Court for the Southern District determined, based on article III, section 52-a's and the Act's recognition that economic development is a public purpose and the Texas courts' liberal interpretation of public use requirement under the taking clause, that condemnation of property for a private marina project did not violate the public use requirement of Texas Constitution article I, section 17. *See W. Seafood Co. v. City of Freeport*, 346 F. Supp. 2d 892, 898 (S.D. Tex. 2004), *affirmed in part, and vacated and remanded in part by W. Seafood Co. v. United States*, 2006 WL 2920809 (5th Cir.2006) (not designated for publication). But the Fifth Circuit Court of Appeals, while upholding the exercise of eminent domain under the United States Constitution, vacated and remanded on the taking claim under the state constitution for reconsideration in light of Government Code section 2206.001, placing limitations on the use of eminent domain for economic development purposes. *See W. Seafood Co. v. United States*, 2006 WL 2920809, at *1, 4–6; *see also* Act of Aug. 16, 2005, 79th Leg., 2d C.S., § 1, 2005 Tex. Gen. Laws 1, 1–2 (enacting Government Code section 2206.001, the Limitations on Use of Eminent Domain Act).

[11]*See also Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex. 1979) ("Statutory exemptions from taxation are subject to strict construction . . . ."); *accord River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851, 854–55 (Tex. 1963); *Bexar Appraisal Dist. v. Incarnate Word Coll.*, 824 S.W.2d 295, 297 (Tex. App.—San Antonio 1992, writ denied) ("It is a long-standing rule of construction in Texas that language granting exemptions from taxation must be construed strictly.").

property is properly appraised. *See id.* §§ 6.41 (Vernon Supp. 2006), 41.01 (Vernon 2002). Each year, the chief appraiser must prepare appraisal records listing all taxable property in the district and stating its appraised value. *See id.* § 25.01 (Vernon 2002). Following notice to the property owners of the appraised value, the chief appraiser submits the completed appraisal records to the appraisal review board "for review and determination of protests." *Id.* § 25.22(a). The appraisal review board's duties include, as relevant here, determining protests initiated by taxpayers, challenges initiated by taxing units, and "whether an exemption or a partial exemption is improperly granted." *Id.* § 41.01(a)(1)–(2), (5). Taxing units are entitled to bring challenges of designated actions before the appraisal review board, including challenges to the exclusion of property from the appraisal records and "a grant in whole or in part of a partial exemption." *Id.* § 41.03(a)(2)–(3). The owner of the property is entitled to protest the inclusion of the property on the appraisal records or denial "in whole or in part of a partial exemption." *Id.* § 41.41(a)(3)–(4). And the property owner, the taxing unit, and the chief appraiser are entitled to appeal to a district court an order of the appraisal review board determining protests of property owners and challenges by taxing units. *See id.* §§ 42.01, .02, .031, .21.

In answer to the third question, the Tax Code permits the Tarrant County Appraisal District to challenge the tax-exempt status of a particular property designated by the Authority as a section 4B(k) project. *See id.* §§ 25.01, 42.02; *see also Jester Dev. Corp. v. Travis County Appraisal Dist.*, 775 S.W.2d 464, 465–66 (Tex. App.—Austin 1989, no writ). The chief appraiser of the Tarrant County Appraisal District is charged with initially determining whether the section 4B(k) tax exemption applies to a particular property designated by the Authority as a 4B(k) project. *See* TEX. TAX CODE ANN. § 25.01 (Vernon 2002).[12] If the District does not believe that the property is tax exempt, it may include the property on the appraisal records as taxable property and then defend its position before the Tarrant County Appraisal Review Board and appeal to the district court an order of the board determining in favor of the property owner. *See id.* §§ 25.01, 42.02; *Jester Dev. Corp.*, 775 S.W.2d at 466 ("[T]he Appraisal District should apply the statute as it thinks proper and, if the taxpayer appeals to district court, then the . . . District may defend its position.").

Additionally, the Tax Code permits a taxing unit within which a particular property designated by the Authority as a section 4B(k) project is located to challenge before the Tarrant County Appraisal Review Board the exclusion of the property from the appraisal records and appeal to the district court the board's determination. *See* TEX. TAX CODE ANN. §§ 41.03(2), 42.031 (Vernon 2002); *see also Atacosa County v. Atacosa County Appraisal Dist.*, 990 S.W.2d 255, 259 (Tex. 1999) ("Chapters 41 and 42 of the Tax Code allow a taxing unit to challenge appraisal district decisions that affect appraisal records.").

But "[n]owhere in the tax code is there a provision for an individual taxpayer to challenge the grant of an exclusion [from the appraisal records] on another's property in the courts." *Scott v. Harris Methodist HEB*, 871 S.W.2d 548, 550 (Tex. App.—Fort Worth 1994, no writ). Thus, the Tax

---

[12]*See, e.g., Nw. Indep. Sch. Dist. v. City of Fort Worth*, 1997 WL 269095, at *2 (Tex. App.—Austin 1997, no pet.) (not designated for publication) (stating with respect to a 4B(k) project that the "appraisal district will have to make some threshold determinations before the property will have tax-exempt status").

Code does not give an individual taxpayer an administrative remedy or statutory standing to challenge an exemption granted to any other property owner. *See id.* Additionally, under the common law, "[a] private citizen who seeks to assert a public right lacks standing to assert that right unless he can establish that he has been injured in a manner distinct from others." *Id.* (citations omitted). The fact that the taxpayer will pay higher taxes because of the exemption granted to another is insufficient. *See id.*

## S U M M A R Y

Under the terms of section 4B(k) of article 5190.6, Texas Revised Civil Statutes (the "Act"), land and improvements for the specifically listed purposes in section 4B(a)(2) of the Act constitute projects eligible for tax exemptions. Additionally, any other land and improvements that the Westworth Redevelopment Authority's (the "Authority") board of directors determines promote or develop business enterprises in accordance with section 4B(a)(3) of the Act are such eligible projects. But whether a particular property or improvement constitutes a "project" under the section 4B(a) standards is a question of fact. The Act grants the Authority's board of directors the discretion to make that determination in the first instance subject to judicial review for abuse of discretion.

Under the terms of section 4B(k) of the Act, projects used for private commercial purposes would be eligible for tax exemption. A court could determine that section 4B(k), when applied to exempt from ad valorem taxes such projects that do not meet the established public purpose use test, is unconstitutional as applied.

The Tax Code permits the Tarrant County Appraisal District and a taxing unit in which a particular property designated by the Authority as a section 4B(k) project is located to challenge the property's tax-exempt status.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee