# IN THE SUPREME COURT OF TEXAS

Nos. 10-0683, 10-0714

AHF-ARBORS AT HUNTSVILLE I, LLC, PETITIONER,
AHF-ARBORS AT HUNTSVILLE II, LLC, PETITIONER,

v.

WALKER COUNTY APPRAISAL DISTRICT, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TENTH DISTRICT OF TEXAS

JUSTICE WILLETT, dissenting.

I respectfully disagree with the Court's resolution of both issues.

I

The Court concludes that the Arbors were not required to deliver a copy of their annual audits

to TDHCA in order to claim their exemptions. Section 11.182(g) imposes three requirements:

- The first sentence explicitly states that "[t]o receive an exemption," the property owner "must" have an audit prepared.[1]

- The second sentence specifies that the audit "must" contain certain information.

- The third sentence states that a copy of the audit "must" be delivered to TDHCA and the chief appraiser of the appraisal district.

---

[1] TEX. TAX CODE § 11.182(g).

The requirements are in the same statutory subsection, all contain the word "must," and all pertain to the audit. I cannot agree that the Legislature only intended the first requirement as a mandatory prerequisite to receiving the exemption, and considered the other two as merely advisory, recommended, or subject to later compliance, when the word "must" is found in all three sentences. The Court's reading ignores longstanding principles of statutory construction, namely, that provisions should be read in context,[2] and that meaning should be given to all provisions if possible.[3] Read in context, the provision sets out the three things a property owner must do to receive the exemption.

I agree with the court of appeals' common-sense reading of Section 11.182(g) and would affirm that court's judgment without reaching other issues. I would hold that substantial compliance with Subsection (g) sufficient to warrant the exemption requires compliance with each of the straightforward requirements set out in the three sentences of the subsection. A complete failure to deliver the audit to TDHCA should preclude the applicant from receiving the exemption.

II

Putting aside the issue of nondelivery, I disagree with the Court's conclusion that a property owner is entitled to a Section 11.182 exemption when the property is owned by a limited liability company whose sole member is a CHDO. The issue is debatable, and the Court accurately describes

---

[2] *E.g.*, TEX. GOV'T CODE § 311.011(a); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

[3] *E.g.*, *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000) ("[W]e give effect to all words of a statute, and, if possible, do not treat any statutory language as mere surplusage.").

the split of authority in our courts of appeals. Ultimately, however, I think the District has the better argument.

Section 11.182(b) provides a tax exemption to an organization for "property it owns" if the organization "is organized as a community housing development organization" and "owns the property."[4] The Arbors own the properties but are not CHDOs; Atlantic is a CHDO but does not own the properties. Yes, Atlantic is the sole member of the Arbors, but a member of a limited liability company "does not have an interest in any specific property of the company."[5] In sum, none of these entities is entitled to a property tax exemption under Section 11.182.

These companies are asking the Court to pierce the corporate veil that they themselves created. The Court postulates that the corporate structure was needed to secure financing and for other business reasons. Regardless of the reasons Atlantic or its principals created the Arbors, I would not allow private parties to create separate corporate entities when it suits them, and then expect the courts and taxing authorities to ignore those corporate formalities when they stand in the way of preferential tax treatment.

I find the Court's discussion of equitable ownership unpersuasive. The Court embraces the concept that a corporate parent is the equitable owner of property otherwise held by a subsidiary because the parent has a "present right to compel legal title." The reasoning proves too much. Does this mean a parent corporation or other controlling shareholder is also liable for the taxes or other debts of the subsidiary, because the parent controls the subsidiary and has a "present right" to compel

---

[4] TEX. TAX CODE § 11.182(b).

[5] TEX. BUS. ORGS. CODE § 101.106(b).

the transfer of the subsidiary's property? I prefer that courts generally respect corporate formalities and whatever benefits and burdens flow from the separateness of the corporate entities.

Texas law respects corporate formalities, and piercing the corporate veil is usually limited to circumstances of fraud or other malfeasance. The Legislature has provided that a holder of shares or "an owner of any beneficial interest in shares," including "any affiliate of such a holder [or] owner" is not liable for the contractual obligations of a corporation on the theory that the holder or beneficial owner "was the alter ego of the corporation or on the basis of actual or constructive fraud . . . or other similar theory."[6] The only exception is when the "holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."[7] The Legislature has further provided that a holder of corporate shares is not liable for any corporate obligation on grounds that the corporation failed "to observe any corporate formality."[8] These rules apply to limited liability companies,[9] and indeed, limited liability companies would serve little purpose if rules limiting liability did not apply.

This Court, in a franchise tax case, refused to disregard the corporate separateness of a utility and its affiliates, rejecting the taxing authority's attempt the treat the corporations as a single business entity for tax purposes. We concluded that "no basis for disregarding the separate corporate

---

[6] *Id.* §§ 21.223(a), (a)(2).

[7] *Id.* § 21.223(b).

[8] *Id.* § 21.223(a)(3).

[9] *Id.* § 101.002(a).

4

identities" existed.[10]  In another tax case, a court of appeals ruled that a taxing authority's notice to a parent corporation did not amount to adequate notice to a subsidiary, reasoning that "subsidiary corporations and parent corporations are separate and distinct 'persons' as a matter of law; the separate [identity] of corporations will be observed by the courts even in instances where one may dominate or control, or may even [be treated] as a mere department, instrumentality, or agency of the other."[11]

If taxing authorities, upon nonpayment of property taxes by a subsidiary, could routinely look to the parent to pay the taxes on the theory that the parent, after all, could compel a transfer of title and is the "equitable owner" of the property, the legal and business communities would be astounded.  I, too, would likely object to a taxing authority's practice of ignoring corporate formalities and treating parent and subsidiary as one big happy equitable family of companies.  The reverse practice here—giving a subsidiary a tax exemption because the parent, if it owned the property, could have claimed the exemption—strikes me as equally untenable.  We have recognized, in a variety of tax cases, that taxing authorities should ordinarily impose taxes on and grant exemptions to the entity holding legal title to the property,[12] and in this case the Arbors are distinct

---

[10] *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 89 (Tex. 2003).

[11] *Valero S. Tex. Processing Co. v. Starr Cnty. Appraisal Dist.*, 954 S.W.2d 863, 866 (Tex. App.—San Antonio 1997, pet. denied).

[12] *See Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581, 584 (Tex. 1993) ("While it is true that the heirs hold equitable title to estate property, this interest does not give rise to tax liability.  The responsibility for taxes lies with the administrator as holder of legal title."); *Tex. Turnpike Co. v. Dallas Cnty.*, 271 S.W.2d 400, 401–02 (Tex. 1954) (rejecting argument that "the equitable title is the taxable title," and holding that private corporations constructing toll roads were not entitled to property tax exemptions on ground that they had conveyed "equitable, beneficial, and superior" title to State under statute providing for such conveyances, when they continued to own "the legal title to the property acquired and to be acquired"); *Childress Cnty. v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936) ("The person having

5

legal entities holding legal and record title to the properties in issue. Since they are not CHDOs, they are not entitled to an exemption under Section 11.182.

The Court discusses Section 11.182(e),[13] which seems to allow a limited partnership in some circumstances to qualify for the property-tax exemption if the general partner is a CHDO. But the Arbors are not limited partnerships created under provisions now found in Title 4 of the Business Organizations Code.[14] Instead, they are limited liability companies created under Title 3,[15] a separate statutory regime. The Arbors concede in their brief that "[b]ecause both Arbors and Atlantic are corporations and not partnerships, subsection (e) does not apply." They have never sought an exemption under Subsection (e). If the Court is saying that what's good for limited partnerships is fine for limited liability companies too, I would leave that decision to the Legislature, particularly here, where our practice is to construe tax exemptions narrowly,[16] as the Court concedes.

The fact that the Legislature made provision for a limited partnership to qualify for a property tax exemption when its general partner is a CHDO, while not making similar provision for a limited liability company to qualify for the exemption when its sole member is a CHDO, is sufficient for me to disagree with the Court on this issue. The Legislature could have made similar provision for both types of entities, and did so in Section 11.1825, another tax-exemption provision inapplicable to

---

legal title to property is generally considered to be the owner thereof for purposes of taxation.").

[13] TEX. TAX CODE § 11.182(e).

[14] *See* TEX. BUS. ORGS. CODE §§ 153.001–.555.

[15] *See id.* §§ 101.001–.621.

[16] *N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex. 1979).

today's case.[17]  We need not consider why the Legislature would treat the two entities differently under Section 11.182.  I would note, however, that plausible reasons might exist for drawing a statutory distinction.  A limited partnership, by law and business convention, ordinarily consists of passive limited partners and a single, corporate general partner who manages the business of the partnership.[18]  Therefore, "there is no particular reason for a limited partnership to have any managerial employees—or indeed any employees at all."[19]  Requiring a limited partnership to behave like a CHDO is not as a practical matter much different from requiring the limited partnership's general partner to operate as a CHDO.  I am not aware that the same can be said of limited liability companies, which do not have general partners, may have multiple members who control the company, may or may not have a parent corporation, and may have managers who manage the company even if the sole member is a parent corporation.[20]  On the last point, the Court acknowledges that the Arbors have managers who are the governing authority of the companies.

---

[17] *See* TEX. TAX CODE § 11.1825(c).

[18] *See Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 859 (Tex. 2011) (Willett, J., concurring) (citing TEX. BUS. ORGS. CODE §§ 153.102, .152; 19 ROBERT W. HAMILTON ET AL., BUSINESS ORGANIZATIONS §§ 1.8, 13.1, 13.2, 14.7 (Tex. Practice 2004)).

[19] *Id.* (Willett, J., concurring).

[20] Except during certain formation and termination periods, a limited liability company must have one or more "members." TEX. BUS. ORGS. CODE § 101.101.  It is operated by its managers if its certificate of formation provides for managers, or alternatively by its members.  *Id*. § 101.251.  A member may be a corporation or natural person.  *See id.* §§ 1.002(69-b), 101.102.  Title 3 neither prohibits nor expressly authorizes the member of a limited liability company to be a corporate parent of the company.  But if the company has only a single member and that member is a corporation, the company would in effect be something akin to a subsidiary of the sole corporate member, since a member of a limited liability company is something akin to a shareholder of a corporation, with limited liability and a right to share in distributions, but no right to any specific property of the company.  *See id.* §§ 101.002(a), .106(b), .114, .203.

The Legislature worded Section 11.182 in a manner that treats LLCs and LPs differently, presumably on purpose.  I would respect that policy choice and apply the statute as enacted rather than amend it as desired.  Lawmakers, whatever their reasons, enacted a statute that simply makes the exemption unavailable here.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** June 8, 2012