# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
### NO. 02-14-00188-CV


JACK COUNTY APPRAISAL
DISTRICT

APPELLANT

V.

JACK COUNTY HOSPITAL
DISTRICT

APPELLEE

----------

### FROM THE 271ST DISTRICT COURT OF JACK COUNTY
### TRIAL COURT NO. 13-07-097

----------

## OPINION

----------

In two issues, Appellant Jack County Appraisal District (the Appraisal District) appeals from the trial court's order granting Appellee Jack County Hospital District's (the Hospital District) motion for summary judgment and denying the Appraisal District's motion for summary judgment. We affirm.

**Background**

The Hospital District is a political subdivision of the State of Texas. In June 2011, the Hospital District entered into a lease agreement with Provident Equipment Leasing, a division of Celtic Leasing Corporation, to lease a CT scanner for use at Faith Community Hospital in Jacksboro, Texas. The lease agreement provided that title to the CT scanner would remain in Provident and that the Hospital District was required to pay all property taxes on the CT scanner. The monthly rental payments were $10,788, and the lease agreement's initial term was for sixty months and could be extended in one-year intervals. The lease agreement also gave the Hospital District the right to purchase the CT scanner from Provident at the expiration of the lease term:

> Lessee may purchase, or renew the Lease for, all but not less than all of the Equipment subject to any Schedule, provided Lessee is not in default and upon proper written notification to Lessor,[1] as of the expiration of the Term of said Schedule. In the event Lessee notifies Lessor it elects to purchase the Equipment, the purchase price shall be the "Fair Market Value" of the Equipment. For the purpose of this Lease, "Fair Market Value" is defined as the total cost(s) it would take to replace the Equipment on an in-place, installed basis, including all current cost(s) and expense(s) for the purchase, assembly, installation, delivery, freight, consulting, training, site preparation[,] and any other services that would be required to render such Equipment fully installed, ready, and acceptable for use by an end user as of the termination of the Term. If Lessor and Lessee can[]not agree on a purchase price then the purchase price shall be determined by the average of two Senior Appraisers accredited by the American Society of Appraisers, one chosen by

---

[1]The lease agreement required that the Hospital District notify Provident in writing of its election to purchase the CT scanner at least six months, but not more than twelve months, before the end of the lease term.

2

Lessor and one chosen by Lessee, both using the definition of Fair Market Value hereunder in determining their purchase price, the cost of which shall be borne by Lessee.

In April 2012, Celtic Leasing rendered the CT scanner to the Appraisal District. *See* Tex. Tax Code Ann. § 22.01 (West 2015). The Appraisal District appraised the CT scanner at a value of $571,560 and sent notice of the appraised value to Celtic Leasing. *See id.* § 25.19 (West 2015). Celtic Leasing did not file a protest. The Appraisal District sent two tax bills to Celtic Leasing totaling $19,578.71. Celtic Leasing paid the taxes, and Provident billed the Hospital District for them. The bill from Provident was the first notice the Hospital District had received that the Appraisal District had appraised the CT scanner for taxation. The Hospital District filed a protest with the Jack County Appraisal Review Board, which was denied.

The Hospital District appealed the Jack County Appraisal Review Board's decision to the district court, contending that the CT scanner was public property and therefore tax exempt. *See id.* § 11.11(a), (h). (West 2015). The Hospital District and the Appraisal District filed cross-motions for summary judgment. *See* Tex. R. Civ. P. 166a(a)–(c). The Hospital District moved for summary judgment on the grounds that the CT scanner was tax exempt under section 11.11 because it was used for public purposes and because the Hospital District was a political subdivision of the state and the owner of the CT scanner for purposes of application of the exemption. *See* Tex. Tax Code Ann. § 11.11(a), (h). The Hospital District argued in the alternative that it was the owner of the CT scanner

because the lease agreement created a security interest in the CT scanner in favor of Provident, making the Hospital District the owner. The Hospital District further argued that because the 2012 notice of appraised value was not delivered to the Hospital District, it was denied due process, thereby voiding the tax assessment. The Appraisal District moved for summary judgment on the grounds that the CT scanner was not exempt under section 11.11 because there was no signed lease agreement between the Hospital District and Provident, and even if there were a signed lease agreement, the CT scanner would not be tax exempt because the Hospital District was not the owner of the CT scanner under section 11.11.

Without specifying the grounds upon which it relied, the trial court granted the Hospital District's motion, denied the Appraisal District's motion, and ordered the Appraisal District to "perform the 'post-appeal administrative procedures' found at Texas Property Tax Code, Chapter 42, Subchapter C, including, but not limited to, removing the subject property from the District's Appraisal Rolls for the tax year(s) in question." The Appraisal District appealed.

### Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp*

4

*Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## Discussion

In its first issue, the Appraisal District argues that the trial court erred by granting summary judgment for the Hospital District and by denying summary judgment for the Appraisal District by holding that the CT scanner was owned by the Hospital District, either legally or equitably, for the purpose of property

5

taxation and, therefore, was tax exempt under tax code section 11.11(h) or otherwise not subject to property taxation.

All "tangible personal property" that is located in the taxing unit on the date of valuation "for more than a temporary period" is taxable unless exempt by law. Tex. Tax Code Ann. §§ 11.01, 21.02 (West 2015). Generally, property owned by the state or a political subdivision of the state is exempt from taxation if the property is used for public purposes. *Id.* § 11.11(a). Section 11.11(h) provides:

> For purposes of this section, tangible personal property is owned by this state or a political subdivision of this state if it is subject to a lease-purchase agreement providing that the state or political subdivision, as applicable, is entitled to compel delivery of the legal title to the property to the state or political subdivision, as applicable, at the end of the lease term. The property ceases to be owned by the state or political subdivision, as applicable, if, not later than the 30th day after the date the lease terminates, the state or political subdivision, as applicable, does not exercise its right to acquire legal title to the property.

*Id.* § 11.11(h).

This issue involves statutory construction, which we review de novo. *See CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 231 (Tex. 2013). In construing statutes, our primary objective is to give effect to the legislature's intent. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd

6

results. *Id.* (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We presume that the legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *Id.* (citing *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008); *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex. 1985)). We read statutes as a whole and interpret statutes to give effect to "every sentence, clause, and word of a statute so that no part thereof [will] be rendered superfluous." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) (quoting *Spence v. Fenchler*, 180 S.W. 597, 601 (1915)).

In addition to the general principles that guide our construction of the tax code, statutory tax exemptions are disfavored and are strictly construed against the taxpayer and in favor of the taxing authority. *N. Alamo Water Supply Corp. v. Willacy Cty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). The burden of proof for showing the exemption applies lies with the claimant. *See id.* An exemption must affirmatively appear in the statute, and all doubts are resolved in favor of the taxing authority. *See Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979).

The Appraisal District does not dispute that the Hospital District is a political subdivision of the state or that the CT scanner is used for public purposes.[2] *See* Tex. Tax Code Ann. § 11.11(a). The Appraisal District contends

---

[2]The Appraisal District has abandoned on appeal its contention that the CT scanner was not exempt under section 11.11 because there was no signed lease

that the Hospital District did not own the CT scanner within the meaning of section 11.11(h) because the lease agreement was not a lease-purchase agreement giving the Hospital District the present right to compel delivery of legal title to the CT scanner at the end of the lease agreement's term but instead afforded the Hospital District only the opportunity to purchase the CT scanner for an additional, undetermined amount of consideration at the end of the lease without credits for the lease payments made by the Hospital District. Thus, the Appraisal District argues that title does not automatically vest in the Hospital District at the end of the lease term. The lease merely gives the Hospital District the option to enter into a second transaction to negotiate for the purchase of the CT scanner after the lease ends. The Appraisal District asserts that, at best, the Hospital District has a contingent remainder in the CT scanner because the lease agreement does not specify a sales price and because the Hospital District's ability to purchase the CT scanner depends on the availability of public funding and on the decision of its board of directors. The Appraisal District further asserts that the Lease Agreement did not create a security interest in the CT scanner. It contends that, for these reasons, the CT scanner is not exempt under section 11.11(h), and therefore, it should not be removed from the appraisal roll.

---

agreement between the Hospital District and Provident. The lease agreement attached to the Hospital District's motion as summary-judgment evidence was unsigned, but the Hospital District attached a signed copy of the lease agreement to its summary-judgment response.

8

Section 11.11(h) does not require that a lease-purchase agreement provide a fixed sales price or credit the lease payments towards the sales price. Nor does it require that the state or political subdivision have the necessary funds or approval to purchase the equipment at the end of the lease. The plain language of section 11.11(h) provides that the state or political subdivision is considered the owner of tangible personal property if the property "is subject to a lease-purchase agreement providing that the state or political subdivision, as applicable, is entitled to compel delivery of the legal title to the property to the state or political subdivision, as applicable, at the end of the lease term." *Id.* § 11.11(h). Under the terms of the lease agreement, if the Hospital District chooses to exercise its right to purchase the CT scanner, it is required to notify Provident in writing at least six months, but not more than twelve months, before the end of the lease term. Upon proper written notice of its election to purchase the CT scanner, the Hospital District has the right to compel delivery of legal title to the CT scanner at the end of the lease term by purchasing it at its fair market value, or if the Hospital District and Provident cannot agree on the fair market value, the average of the values determined by two appraisers.[3]

Citing *Texas Department of Corrections v. Anderson County Appraisal District*, 834 S.W.2d 130 (Tex. App.—Tyler 1992, writ denied), the Appraisal

---

[3]If the Hospital District properly elects to purchase the CT scanner, but a fair market value purchase price has not been determined at least thirty days prior to the expiration of the lease term, the term will continue on a month-to-month basis until such time a fair market purchase price can be determined.

District argues that because the lease agreement does not provide that legal title automatically passes to the Hospital District at the end of the term, section 11.11(h) does not apply. In that case, the court of appeals held that the state was the equitable owner of a prison unit because, according to the terms of a lease agreement between the Texas Department of Corrections and a private entity to finance the construction of the unit, the state would acquire full legal title to the unit when all the lease payments were made. *Id.* at 131. The court reasoned that if the lease payments were made, the state could compel delivery of legal title, and therefore, the state was the equitable owner of the prison unit. *Id.* Thus, the unit was tax exempt. *Id.*

But interpreting the "entitled to compel delivery of the legal title" language in section 11.11(h) to mean or to require that title automatically pass at the end of the lease term renders the remainder of the section meaningless or mere surplusage: "The property ceases to be owned by the state or political subdivision, as applicable, if, not later than the 30th day after the date the lease terminates, the state or political subdivision, as applicable, does not exercise its right to acquire legal title to the property." *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (stating that courts must not interpret a statute in a manner that renders any part of the statute meaningless or superfluous); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000) (noting that courts give effect to all of a statute's words and, if possible, do not treat any statutory language as mere

10

surplusage); *see also* Tex. Gov't Code Ann. § 311.021(2) (West 2013) (presuming that legislature intended entire statute to be effective). If title passed automatically, there would be no right to exercise by the thirtieth day after the termination of the lease. Moreover, if the legislature intended to require that title pass automatically, it would have used the language used in tax code section 11.11(g), which addresses improvements to real property leased to the Texas Department of Criminal Justice:

> (g) For purposes of this section, an improvement is owned by the state and is used for public purposes if it is:
>
>> (1) located on land owned by the Texas Department of Criminal Justice;
>>
>> (2) leased and used by the department; and
>>
>> (3) *subject to a lease-purchase agreement providing that legal title to the improvement passes to the department at the end of the lease period*.

Tex. Tax Code Ann. § 11.11(g) (West 2015) (emphasis added).

The Appraisal District also argues that the legislative history of section 11.11(h) supports its contention that the legislature intended that ownership would transfer to the state or a political subdivision of the state only if title passed at the end of the lease term. Specifically, the Appraisal District points to the following language from a fiscal note accompanying one of the versions of House Bill 846, which eventually became section 11.11(h):

> The bill would amend Section 11.11 of the Tax Code to provide that, for property tax purposes, property is owned by the state or a

11

> political subdivision of the state if it is subject to a lease-purchase agreement containing a provision that legal title passes to the state or to a political subdivision at the end of the lease term.

Fiscal Note, Tex. H.B. 846, 75th Leg., R.S. (1997). The original version of House Bill 846 was consistent with the fiscal note: "For purposes of this section, property is owned by this state or a political subdivision of this state if it is subject to a lease-purchase agreement providing that legal title to the property passes to this state or the political subdivision, as applicable, at the end of the lease term." Tex. H.B. 846, 75th Leg., R.S. (1997). This version of the bill, however, was not enacted. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 843, § 1, sec. 11.11, 1997 Tex. Gen. Laws 2715 (codified at Tex. Tax Code § 11.11(h)). Had the legislature intended to require that the lease agreement provide that legal title would automatically pass at the end of the lease term, it would have stated as such. *See* Tex. Gov't. Code Ann. § 311.023(3) (West 2013) (stating that in construing a statute, "whether or not the statute is considered ambiguous on its face," courts may consider legislative history).

The Appraisal District further argues that according to *Texas Turnpike Co. v. Dallas County*, 271 S.W.2d 400 (Tex. 1954), the Hospital District has only a contingent remainder. In that case, the two petitioners were chartered as private corporations for the purpose of building, acquiring, owning, and maintaining toll roads within the State of Texas. *Id.* at 401. Conveyances of real property to the state by the petitioners were placed in escrow pending acceptance by the Texas Turnpike Authority upon satisfaction of certain conditions by the petitioners. *Id.*

12

at 401–02.  The issue on appeal was whether the property acquired by the petitioners was publicly owned so as to be tax exempt under article XI, section 9 of the Texas constitution.  *Id.* at 402.  The supreme court held that the state had no control over performance of the conditions, which could be exercised only by the petitioners, and hence had no legal or equitable title but only a "contingent remainder" that was not a vested interest.  *Id.* at 402–03.  Thus, the property was not owned or held by the state and was not exempt from taxation.  *Id.*  In contrast, in this case, the Hospital District alone has the right to elect to purchase the equipment at the end of the lease term.  Moreover, the issue in this case is whether the CT scanner is tax exempt under tax code section 11.11(a), which the legislature enacted under the power granted to it by article VIII, section 2 of the Texas constitution, not whether the property is exempt under article XI, section 9. *Compare* Tex. Const. art. VIII, § 2(a) (stating that "the legislature may, by general laws, exempt from taxation public property used for public purposes"), *with* Tex. Const. art. XI, § 9 ("The property of counties, cities[,] and towns, owned and held only for public purposes . . . and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation."). Thus, *Texas Turnpike* is not controlling.

We conclude and hold that the Hospital District established, as a matter of law, that it was the owner of the CT scanner as defined in section 11.11(h), and therefore, the CT scanner was exempt from taxation under section 11.11(a). Thus, the trial court did not err by granting summary judgment in favor of the

Hospital District. Because we have concluded that the trial court properly granted summary judgment on the basis of the tax exemption, we need not address whether the lease agreement created a security interest in the CT scanner in favor of Provident, thereby making the Hospital District the owner. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *see also* Tex. R. App. P. 47.1. It is likewise unnecessary for us to address the Appraisal District's second issue in which it argues that the trial court erred by granting summary judgment for the Hospital District and by denying summary judgment for the Appraisal District on the basis that the Hospital District was denied due process because the 2012 notice of appraised value was delivered to Celtic Leasing and not to the Hospital District. *See Knott*, 128 S.W.3d at 216; *see also* Tex. R. App. P. 47.1.

## Conclusion

For these reasons, we affirm the trial court's judgment.


/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

GABRIEL, J., filed a dissenting opinion.

DELIVERED: January 14, 2016