

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00373-CV

_____

DAN DILTS CONSTRUCTION, INC., AND DAN DILTS, Appellants

V.

MARK WEEKS, Appellee

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 184,648-C

Before Walker, Meier, and Gabriel, JJ.
Memorandum Opinion by Justice Meier
Justice Gabriel concurs without opinion

**MEMORANDUM OPINION**

Appellants Dan Dilts Construction, Inc. and Dan Dilts (collectively Dilts) appeal the trial court's final judgment granting the traditional and no-evidence motions for summary judgment filed by appellee Mark Weeks. In its final judgment, along with postjudgment interest and attorney's fees, the trial court awarded Weeks damages of $65,015.97, comprising $61,112.70 that the court implicitly found Dilts owed Weeks under a contract plus prejudgment interest. On appeal, Dilts appears to recognize that he owed money to Weeks under the contract but contends that a proper interpretation of the contract and of a statute governing the contract requires less damages. We hold that Weeks met his summary-judgment burden to show that Dilts breached the contract but did not meet his summary-judgment burden to prove the amount of his damages as a matter of law. We therefore affirm the trial court's judgment in part, reverse it in part, and remand this case to the trial court.

**Background**

Dilts owns several properties in Wichita County. After his properties sustained hail damage in 2015, he filed insurance claims. He later hired Weeks, a public insurance adjuster,[1] to provide services with respect to the claims. The parties'

---

[1]A public insurance adjuster includes someone who, for compensation, "acts on behalf of an insured in negotiating . . . the settlement of a claim . . . for loss or damage under any policy of insurance covering real or personal property." Tex. Ins. Code Ann. § 4102.001(3)(A)(i) (West 2009). Public insurance adjusters must be licensed by the Texas Department of Insurance. *Id.* § 4102.051(a) (West Supp. 2018).

contract, in a form approved by the Texas Department of Insurance,[2] contained the

following terms:

> The Insured(s) Dan Dilts Construction Inc [r]etains <u>Mark Weeks</u> (Public Adjuster) to assist in the preparation, presentation, and adjustment of all applicable claims for [hail] damage[.] . . . This loss occurred on or about 5-16-2015[.]
>
> . . . .
>
> Insured agrees to pay <u>Mark Weeks</u>[,] . . . upon settlement and payment of claim, a fee of 10% (not to exceed ten (10%) percent or twenty[-]five (25%) percent on supplements) of the amount collected, adjusted[,] or otherwise received . . . or issued by the involved Insurance Carrier including expenses, direct cost, or any other cost accrued by the Public Insurance Adjuster. . . .

According to an affidavit filed by Weeks, through his adjusting services, he

obtained "recovery of policy benefits on behalf of [Dilts] totaling $611,127.04 in gross

recovery replacement cost value." Dilts did not pay Weeks any share of the recovery.

In May 2016, Weeks sued Dilts. Weeks asserted that Dilts had breached the

parties' contract by failing to pay a share of the recovery. He alleged that under the

contract, Dilts owed him $61,112.70 (ten percent of the gross recovery replacement

cost value of $611,127.04).

---

[2]A public insurance adjuster may not perform services "without having first entered into a contract, in writing, on a form approved by the commissioner, executed in duplicate by the license holder and the insured . . . . A license holder may not use any form of contract that is not approved by the commissioner." Tex. Ins. Code Ann. § 4102.103(a) (West Supp. 2018).

After Dilts filed an answer, Weeks filed a traditional motion for summary judgment. In an affidavit that he signed, he averred that under the contract, Dilts owed him a commission of $61,112.70.

In Dilts's response to Weeks's motion, he asserted that before he had hired Weeks, his insurance company had found a replacement cost value of $351,554.05 and an actual cash value of $285,380.54, and after accounting for policy deductibles, had awarded him proceeds of $113,408.62. Dilts explained that he had believed those benefits to be insufficient and that he had therefore hired Weeks "to have the claim reconsidered." He asserted that after the insurance company had found a new replacement cost value and had again accounted for deductibles, the company had provided additional proceeds of $180,163.71. Dilts stated that he expected to pay Weeks $18,016.37, ten percent of the additional proceeds, but that Weeks demanded $61,112.70, ten percent of the revised replacement cost value. He argued that under the contract and under statutory and regulatory authority, Weeks was entitled only to the former amount.

After responding to Weeks's motion for summary judgment, Dilts filed counterclaims. He asserted that Weeks had violated certain provisions within the Texas Administrative Code and had violated the Deceptive Trade Practices-Consumer Protection Act (DTPA)[3] by engaging in unconscionable conduct and by

---

[3]*See* Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (West 2011 & Supp. 2018).

misrepresenting facts about the parties' contract. Weeks filed a no-evidence motion for summary judgment with respect to Dilts's counterclaims.

The trial court granted Weeks's traditional motion for summary judgment along with his no-evidence motion for summary judgment on Dilts's counterclaims. Dilts brought this appeal.

## The Trial Court's Summary Judgment Rulings

In three issues, Dilts contends that the trial court erred by granting Weeks's traditional motion for summary judgment and that the trial court erred by "entering final judgment without properly disposing of [Dilts's] counterclaims."

When we review a trial court's grant of a traditional motion for summary judgment, we consider whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We also review a trial court's construction of a contract or a statute de novo. *Jack Cty. Appraisal Dist. v. Jack Cty. Hosp. Dist.*, 484 S.W.3d 228, 231 (Tex. App.—Fort Worth 2016, no pet.); *Rubinstein v. Lucchese, Inc.*, 497 S.W.3d 615, 625 (Tex. App.—Fort

5

Worth 2016, no pet.). In construing a contract or a statute, we generally apply the document's plain meaning as expressed by its language unless another meaning is apparent from the context or the plain meaning leads to absurd results. *Jack Cty. Appraisal Dist.*, 484 S.W.3d at 232; *Rubinstein*, 497 S.W.3d at 625.

In Dilts's first two issues, he appears to challenge the trial court's decision to grant summary judgment on Weeks's claims on grounds of both liability and damages. We will address liability and damages independently.

## Liability on Weeks's claims

Dilts asserts that Weeks failed to demonstrate that he was entitled to summary judgment on his breach of contract claim. In the summary of his argument, he concedes that the parties entered into a contract, but he argues that "numerous issues exist as to the interpretation of the language of [the] contract[,] the enforceability of the contract[,] the voidability of the contract[,] and the disposition of the affirmative defenses"[4] that he pleaded in the trial court.

---

[4]In the argument portion of Dilts's brief, he asserts that his answer "set forth in detail numerous affirmative defenses, none of which have been disproved by the summary judgment evidence." We note that a "plaintiff is not required to move for summary judgment on the defendant's affirmative defenses and has no obligation to negate those defenses." *Marx v. FDP, LP*, 474 S.W.3d 368, 377 (Tex. App.—San Antonio 2015, pet. denied); *see also Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) ("If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment.").

We conclude that these contentions, to the extent that Dilts raises them to contest his liability for breach of contract, are inadequately briefed. Dilts does not expound on his assertions that the contract was unenforceable or void, does not specify which affirmative defenses foreclose his liability for breach of contract or how they do so, and does not cite any authority related to those matters. Under these circumstances, he presents nothing for our review of the trial court's finding on liability. *See* Tex. R. App. P. 38.1(i) (requiring a clear and concise argument for the contentions made along with citations to authorities); *Nationwide Prop. & Cas. Ins. Co. v. Revive Mfg.*, No. 02-17-00148-CV, 2018 WL 2248667, at *8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.) ("We are typically hesitant to conclude that a party waived an issue for inadequate briefing, but when the briefing completely fails rule 38.1(i)'s charge, as it plainly does here, our decision is straightforward."); *Sanders v. Future Com, Ltd.*, No. 02-15-00077-CV, 2017 WL 2180706, at *6 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.) ("Sanders . . . fails to cite to any relevant authority in support of this argument. Under the settled rule of appellate review that an appellate complaint may be waived due to inadequate briefing, we hold that Sanders has waived the remainder of his first issue."); *see also Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex. App.—Houston [1st Dist.] 1995, no writ) (op. on reh'g) ("Happy Harbor does not provide us with argument that is sufficient to make its appellate complaint viable, and we will not perform an

independent review of the record and applicable law to determine whether the error complained of occurred. We will not do the job of the advocate." (citation omitted)).

Moreover, we hold that the evidence establishes, beyond any genuine issue of material fact, Dilts's liability for breach of contract. To prove a breach of contract claim, a plaintiff must show (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.). Weeks proved in the trial court that the parties entered into a contract, and Dilts concedes on appeal that they did so. Weeks also proved, through his affidavit along with other evidence, that he tendered performance by obtaining an adjustment of Dilts's insurance claim and that Dilts breached the contract by failing to pay Weeks any money upon the settlement and payment of the insurance claim.[5] Finally, Dilts's failure to pay the contractual fee for Weeks's services proved that Weeks sustained some amount of damages.

---

[5]On appeal, Dilts concedes that after Weeks performed his adjustment services, the insurance company paid Dilts an additional $180,163.71. He also concedes that he therefore "expected to owe [Weeks] a fee of 10% of the additional insurance proceeds received, . . . equal to $18,016.37." The record does not contain any evidence showing that Dilts tendered performance by offering to pay any amount to Weeks, and on appeal, Dilts does not cite any authority for the proposition that he was excused from tendering performance by paying the expected amount.

8

For these reasons, we hold that the trial court did not err by granting Weeks's traditional motion for summary judgment to the extent that the court found Dilts liable for breach of contract. We overrule Dilts's first and second issues to that extent.

**Damages arising from Weeks's claims**

Most of Dilts's argument appears to challenge the trial court's calculation of damages. Dilts contends that he was obligated to pay Weeks only ten percent of $180,163.71, the additional proceeds Dilts says he received after Weeks provided his services, not ten percent of $611,644.58, the revised replacement cost value found by the insurance company. As Dilts contends, "The question thus becomes, 'Is [Weeks] entitled to a fee equal to 10% of the gross replacement cost value of the claims ($611,127.04 x 10% = $61,112.70), or 10% of the insurance proceeds received as a result of [Weeks's] efforts ($180,167.71 x 10% = $18,016.37) . . . ?[']"[6] Without further explanation, Weeks asserts that his charge of $61,112.70 for his commission was "just and true and in accordance with the terms of the contract." He also contends that there is "no evidence in the record that [Dilts was] only paid $180,167.71 by the insurance company after the contract was signed."

---

[6]Weeks contends, in part, that Dilts waived any argument about the amount of the damages awarded by the trial court by failing to raise an issue concerning the amount in the trial court. We disagree. In Dilts's answer and in his response to Weeks's motion for summary judgment, he asserted that Weeks was seeking an incorrect amount of damages.

9

A plaintiff asserting a breach of contract claim has the burden to prove the amount of damages. *See Lakewood Pipe of Tex., Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 556 (Tex. App.—Houston [1st Dist.] 1991, no writ) (op. on reh'g); *see also Haygood v. De Escabedo*, 356 S.W.3d 390, 399 (Tex. 2011) (reciting the "fundamental rule" that a plaintiff must prove damages). Weeks sought damages in the form of his compensation owed under the contract. The contract stated that "upon settlement *and payment of*" a claim, Weeks was entitled to "a fee of 10% (not to exceed ten (10%) percent or twenty[-]five (25%) percent on supplements) *of the amount collected, adjusted[,] or otherwise received . . . or issued* by the involved Insurance Carrier." [Emphases added.] Likewise, the insurance code regulates the commissions of public insurance adjusters and provides that a license holder may receive a commission based on an hourly fee, a flat rate, or a "percentage of the total amount *paid by an insurer to resolve a claim . . . . The total commission received may not exceed 10 percent of the amount of the insurance settlement*[7] *on the claim*." Tex. Ins. Code Ann. § 4102.104(a) (West Supp. 2018) (emphasis added); *see also id.* § 4102.104(b) (explaining that the license holder's commission may consist of a "percentage of the total amount *paid by an insurer* to resolve a claim" (emphasis added)). A public insurance adjuster may not accept any payment that violates section 4102.104. *Id.* § 4102.104(d).

---

[7]A "settlement" is a "payment, satisfaction, or final adjustment." Settlement, Black's Law Dictionary (10th ed. 2014).

We conclude that the plain, unambiguous meaning of the contract (and of section 4102.104, which is consistent with the terms of the contract) is that Weeks was entitled to a commission of ten percent of the amount that Dilts's insurer paid ("issued") and that Dilts "collected" or "received" as a result of Weeks's services. Weeks did not present evidence establishing, beyond any genuine issue of material fact, what amount Dilts's insurer paid as a result of Weeks's services. Rather, as evidenced from his affidavit, Weeks based his commission and his request for damages on ten percent of the gross recovery replacement cost value.[8] For the reasons stated above, we conclude that Weeks's proposed recovery was not the proper amount to be awarded under the contract, and the trial court erred by awarding damages of $61,112.70. We sustain Dilts's first and second issues to that extent.

As Weeks contends, however, the record does not contain evidence proving the amount that Dilts's insurer paid after Weeks performed his services (from which Weeks is entitled a ten percent commission under the contract). On appeal, Dilts asserts that the amount is $180,163.71, and he pleaded the same amount in the trial court but did not provide summary judgment evidence supporting that pleading. Thus, we conclude that the summary judgment evidence shows that the trial court awarded an improper amount of damages but does not establish the proper amount.

---

[8]On appeal, although Dilts contends that Weeks improperly used the gross recovery replacement cost value to calculate his commission, Weeks does not offer any argument to articulate why using that amount was proper under the contract.

11

Under such circumstances, we must reverse the trial court's judgment and remand for further proceedings. *See* Tex. R. App. P. 43.2(d); *Baeza v. Hector's Tire & Wrecker Serv., Inc.*, 471 S.W.3d 585, 588 (Tex. App.—El Paso 2015, no pet.) (reversing and remanding for a new trial on damages when the evidence was sufficient to prove a breach of contract and some damages sustained by the plaintiff but was insufficient to prove the amount the trial court awarded).

**Disposition of Dilts's counterclaims**

In his third issue, Dilts argues that the trial court erred by rendering a final judgment without disposing of his counterclaims. We reject this argument. The record establishes that Weeks filed a no-evidence motion for summary judgment—*see* Tex. R. Civ. P. 166a(i)—on Dilts's counterclaims and that the trial court granted the motion. Dilts does not argue that the trial court erred by granting Weeks's no-evidence motion. Therefore, we overrule Dilts's third issue, and we will affirm the trial court's judgment to the extent that it disposed of Dilts's counterclaims.

## Conclusion

Having overruled Dilts's first and second issues in part along with all of his third issue, and having sustained his first and second issues in part, we reverse the trial court's judgment and remand this case to the trial court for further proceedings to determine the proper amount of Weeks's damages.[9]

/s/ Bill Meier
Bill Meier
Justice

Delivered: November 1, 2018

---

[9]We need not remand on both liability and damages under rule of appellate procedure 44.1(b). *See* Tex. R. App. P. 44.1(b) ("The court may not order a separate trial solely on *unliquidated* damages if liability is contested." (emphasis added)). The damages here are "liquidated" within the meaning of rule 44.1(b) because they may be determined with exactitude through the agreement of the parties and by an arithmetical process. *See DeNucci v. Matthews*, 463 S.W.3d 200, 216 n.6 (Tex. App.—Austin 2015, no pet.) (discussing rule 44.1(b)); *Rycade Oil Corp. v. Lasater*, 375 S.W.2d 556, 558 (Tex. Civ. App.—Austin 1964, no writ).